IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARY VALVANIS, JOHN VALVANIS AND GEORGE VALVANIS, | ) CIVIL NO. 06-00144 JMS-KSC ) ) ORDER DENYING DEFENDANTS' ) MOTIONS TO DISMISS AND/OR |
| Plaintiffs, | ) FOR SUMMARY JUDGMENT ) |
| vs. | ) ) |
| ROBERT B. MILGROOM AND NADA MARTL aka NADA R. MILGROOM, | ) ) ) |
| Defendants. | ) ) |
| _____ | ) |

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiffs Mary, John, and George Valvanis ("Plaintiffs" or "Valvanis Family") allege that Defendants Robert B. Milgroom ("Milgroom") and Nada Martl ("Martl"), (collectively, "Defendants"), engaged in a scheme to hide and shield assets from Milgroom's creditors, including Plaintiffs. Defendants married in 2001, and in 2002 purchased real property located in Honolulu, Hawaii (the "Hawaii Property") to be held as tenants by the entirety. In 2003, Milgroom transferred his interest in the property to Martl, and the two divorced in 2005. Plaintiffs allege that the property transfer to Martl was fraudulent, and seek

damages and equitable relief, including avoidance of the Hawaii Property transfer to Martl.  Martl and Milgroom filed Motions to Dismiss, or in the Alternative, for Summary Judgment on August 15, 2007, and August 24, 2007, respectively.  A hearing was held on October 29, 2007.  For the reasons stated herein, the court DENIES Defendants' Motions to Dismiss and/or for Summary Judgment.

## II.  BACKGROUND

### A.    Factual Background

The factual background, for purposes of these Motions to Dismiss and/or for Summary Judgment,[1] are as follows:

### 1.    *Plaintiffs' Claims as Creditors of Milgroom*

Plaintiffs allege that they became Milgroom's creditors from business dealings that occurred in the 1980s, and which are the basis of litigation spanning from 1987 through the present.  In April 1987, Plaintiffs filed a lawsuit against Milgroom in Massachusetts (the "Massachusetts Action") alleging that he "wrongfully used his influence as attorney and certified public accountant over the Valvanis Family business" to shift for his benefit business worth $2,000,000 and

---

[1] Where appropriate, the court cites to both the Amended Complaint and the evidence submitted by the parties.  In making the Fed. R. Civ. P. 9(b) determination, the court relies on only the allegations of the Amended Complaint.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (noting that a motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

real estate worth $2,000,000.  Am. Compl. ¶ 9; *see also* Martl Ex. B-1 (reciting

factual background of Massachusetts Action).

In 1994, a Special Master in the Massachusetts Action issued a report

finding that the Valvanis Family owed Milgroom $150,000.  Martl Ex. B-1 at 12.

After this report, both parties participated in the Massachusetts Action.  The

parties filed motions for extensions to file objections, Pls.' Ex. J, Milgroom's

attorney filed a motion to withdraw, *id.*, and Milgroom appeared pro se.  Pls.' Exs.

F, M ¶¶ 12, 18.  The Massachusetts Action stalled for several years, but on

October 18, 2005, the court entered a judgment against Milgroom after he failed to

participate.  Am. Compl. ¶ 42; Martl Ex. D at 1.  On July 3, 2007, the

Massachusetts Court issued a Memorandum of Decision on Damages Trial and

Order for Judgment, ordering judgment and damages in favor of Plaintiffs.  *See*

Martl Ex. D.

### 2.   *Milgroom and Martl*

Milgroom married Martl on September 11, 2001, six months after his

first wife passed away.  Am. Compl. ¶ 18; Pls.' Ex. K (listing wedding date).  Prior

to their marriage, Defendants were involved together in two Florida real estate

investment companies.  Am. Compl. ¶¶ 14-17; Pls.' Exs. A at 317-20, B (listing

Milgroom's income from "Elegant Homes of Florida" in 1999 and "Martl Int'l" in

2000).  Martl agreed to marry Milgroom and give up her real estate business in exchange for half of Milgroom's net worth, which was estimated to be at least $10 million.  Am. Compl. ¶¶ 19-20; Martl Ex. C at 111-12.  In lieu of giving Martl $5 million, Milgroom added her name to all of his financial accounts.  Am. Compl. ¶ 21; Pls.' Ex. A at 136.  Martl later opened a bank account in Germany and transferred "a significant portion" of Milgroom's money to it.  Am. Compl. ¶ 23; *see also* Pls.' Ex. A at 113; Martl Decl. ¶ 13 (noting that the German bank account may have included "some funds I received in sharing Milgroom's property in consideration for giving up" the business).

On August 2, 2002, Defendants purchased the Hawaii Property, located at 253 Puuikena Drive, Honolulu, Hawaii 96821, for $5.2 million cash. Am. Compl. ¶ 24; Martl Ex. A-1.  Martl alleges that "the funds used to purchase the Hawaii Property were solely my own, and were wired to Hawaii from a German bank account solely under my name and control."  Martl Decl. ¶ 4. Plaintiffs allege that the Hawaii Property payment did not come directly from the German bank account and these funds are traceable to Milgroom's $10 million net worth.  Am. Compl. ¶ 26.  On July 12, 2002, $6,499,982 was wire transferred from a German bank account to First Hawaiian Bank and deposited into Defendants' joint checking account.  Ueno Decl. ¶ 17; Pls.' Ex. L.  Milgroom then drew a

4

check from this account for $7,125,000 payable to Milgroom, and deposited it into Defendants' joint savings account.  Ueno Decl. ¶ 17; Pls.' Ex. L.  Milgroom then used these funds to purchase the Hawaii Property.  Ueno Decl. ¶ 17; Pls.' Ex. L.

On May 13, 2003, Milgroom transferred his interest in the Hawaii Property to Martl for no consideration.  Am. Compl. ¶ 29; Martl Exs. C at 193, A-3.  Plaintiffs allege that as a result, Milgroom became insolvent.  Am. Compl. ¶ 30; *see also* Pls.' Ex. P (stating that Milgroom declared bankruptcy in 2005).

On June 14, 2005, Martl filed for divorce against Milgroom.  Am. Compl. ¶ 33; Pls.' Ex. K.  Plaintiffs allege that Defendants provided "false, incomplete, and misleading information" to expedite the divorce process, Am. Compl. ¶ 36, as the divorce was granted only two weeks later, on June 28, 2005. Pls.' Ex. K.  In the divorce papers, signed under penalty of perjury, neither Defendant listed any income, expenses, cash, credit union accounts, bank and savings accounts, securities, or any other major assets, other than a 2005 BMW vehicle and the Hawaii Property.  *Id.*  Milgroom also signed a release of marital interest in the Hawaii Property.  Am. Compl. ¶ 36; Pls.' Ex K.  After the divorce, Martl continued to financially support Milgroom.  Am. Compl. ¶ 38; Pls.' Ex. X ¶ 130.

### 3.   *Milgroom Declares Bankruptcy*

On July 11, 2005, only two weeks after the divorce decree, Milgroom filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Hawaii.  Am. Compl. ¶ 40; Pls.' Ex. S ¶ 1.  In August 2005, Milgroom converted his bankruptcy case to Chapter 13, in part, to "to avoid investigation and action by the Chapter 7 trustee."  Am. Compl. ¶ 41; Pls.' Ex. S ¶ 7.

Plaintiffs subsequently learned of Milgroom's bankruptcy action and began to participate as creditors.  Am. Compl. ¶ 44; Pls.' Ex. G.  As part of discovery, the bankruptcy court issued a subpoena for Martl's examination on November 30, 2005.  Pls.' Ex. I.  In 2006, Martl left the United States without participating in the bankruptcy action.  Am. Compl. ¶ 64; Pls.' Prelim. Inj. Opp'n Ex. 14.[2]  In March 2006, Milgroom was ordered to execute bank authorizations and produce his laptop for examination, Am. Compl. ¶ 45, Pls.' Ex. P, after he testified that certain computer files may have been deleted by himself, Martl, or someone else in the house.  Pls.' Ex. A at 337-38.  Milgroom failed to comply with the bankruptcy court's orders and left Hawaii.  Am. Compl. ¶ 65; Pls.' Ex. S ¶ 28.

---

[2]  Martl filed a Motion for Preliminary Injunction on August 6, 2007, and the court denies this motion by separate order filed concurrently herewith.  In their response to Martl's Motion for Summary Judgment, Plaintiffs adopted by reference their Response to Martl's Motion for Preliminary Injunction, Declaration, and Exhibits.

On May 12, 2006, the bankruptcy court entered an order (1) finding Milgroom in contempt of court, (2) awarding sanctions, (3) granting Plaintiffs relief from the automatic stay nunc pro tunc, and (4) denying the request for a bench warrant.  Am. Compl. ¶ 47; Pls.' Ex. R.  The bankruptcy court noted that Plaintiffs had "submitted substantial evidence concerning questionable transfers of [Milgroom's] interest in real property in Florida and in Hawaii to Martl during a four-year period prior to [Milgroom's] bankruptcy petition, including without limitation, the transfer of the Debtor's interest in the [Hawaii Property] in 2003 for no consideration."  Pls.' Ex. S at 8.

### 4.      *Martl Attempts to Sell the Hawaii Property Below Market Value*

After leaving Hawaii, Martl listed the Hawaii Property for sale with an asking price of $6,500,000.  Am. Compl. ¶ 54; Pls.' Prelim. Inj. Opp'n  Ex. 16.  This listing price is less than the 2005 tax assessed value of $7,442,800, and comparable homes in the area listing for $8,000,000.  Am. Compl. ¶ 54; Pls.' Prelim. Inj. Opp'n Ex. 16.

## B.      Procedural Background

The Amended Complaint, filed on May 23, 2006, alleges the following causes of action against Defendants:

1.      Fraudulent Conveyance Under Hawaii Revised Statutes ("HRS") ch.

651C, Hawaii Uniform Fraudulent Transfer Act ("HUFTA");

2.      Civil Conspiracy to Defraud;

3.      Common Law Fraudulent Transfer;

4.      Constructive and/or Resulting Trust and/or Equitable Lien;

5.      Injunction Against Further Disposition of the Hawaii Property;

6.      Appointment of Receiver;

7.      Spoliation of Evidence; and

8.      Enforcement of Contempt Order and Judgment.

Martl first filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment on August 21, 2006, which was ultimately deemed withdrawn when this action was stayed from September 27, 2006 to August 2, 2007 to allow the Massachusetts Action to complete through trial.

Martl and Milgroom filed the present motions on August 15, 2007 and August 24, 2007 respectively.[3]  Plaintiffs filed a response to both motions on

---

[3] Milgroom's motion fails to comply with the Local Rules for filing a motion for summary judgment. *See* Local Rule ("LR") 56.1(a) (requiring that a motion for summary judgment be accompanied by a supporting memorandum and a separate concise statement detailing each material fact as to which the movant believes there are no genuine issues to be tried).  While Milgroom is appearing pro se, he is also a disbarred attorney, Pls.' Prelim. Inj. Opp'n Ex. 3, and should know the proper court procedures.  Because Milgroom argues that the Amended Complaint should be dismissed and/or that summary judgment is appropriate for those reasons raised by Martl, the court can nonetheless determine these motions on the merits without requiring refiling.  Milgroom is cautioned that he must follow the Local Rules in the future.

October 11, 2007; Martl and Milgroom filed replies on October 18, 2007 and

October 19, 2007, respectively.  Defendants argue that all counts of the Amended

Complaint should be dismissed for failure to plead fraud with particularity

pursuant to Fed. R. Civ. P. 9(b), or alternatively, that summary judgment is

appropriate.  Based on the following, the court DENIES Defendants' motions.

### III.  <u>STANDARDS OF REVIEW</u>

**A.      Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments

of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity."  "Rule 9(b) requires particularized allegations of the

circumstances *constituting* fraud."  *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541,

1547-48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15 U.S.C. §

78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature

of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to

satisfy this requirement.  *Id*. (citation and quotation signals omitted).  However,

"[m]alice, intent, knowledge, and other condition of mind of a person may be

averred generally."  Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42

F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying

that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir.

1973) (Rule 9(b) "only requires the identification of the circumstances constituting

fraud so that the defendant can prepare an adequate answer from the allegations."

(citations omitted)).

A motion to dismiss for failure to plead with particularity is the

functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Vess*

*v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a

motion to dismiss, the court is not deciding the issue of "whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support

claims." *Hydrick v. Hunter*, 449 F.3d 978, 988 (9th Cir. 2006) (*quoting Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974)).

**B.     Motion for Summary Judgment**

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(c). The burden initially lies with the moving party to show that there

is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary

judgment is mandated if the non-moving party 'fails to make a showing sufficient

to establish the existence of an element essential to that party's case.'" *Broussard*

*v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## IV.  ANALYSIS

### A.      Rule 9(b) Analysis of Plaintiffs' HUFTA Claim

Defendants argue that Plaintiffs have failed to plead their HUFTA claim with particularity, and that this claim, along with the rest of the Amended Complaint (which relies on the HUFTA claim), should be dismissed.  The court disagrees.

///

///

11

### 1.    *HUFTA's Legal Framework*

HUFTA describes "fraudulent transfers" at HRS §§ 651C-4 and

651C-5.  Section 651C-4 describes fraudulent transfers as to present and future

creditors:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

HRS § 651C-4(a).[4]  Section 651C-5 describes fraudulent transfers as to present

---

[4]  HUFTA further provides that in determining the "intent" element of (a)(1), the following non-exclusive factors may be considered:

> (1) The transfer or obligation was to an insider;
> (2) The debtor had retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;

creditors:

> (a)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.

> (b)  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for other than a present, reasonably equivalent value, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

As used by HUFTA, a "'creditor' means a person who has a claim against a

debtor."  HRS § 651C-1.  A "claim" is "a right to payment, whether or not the

---

> (4) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor had absconded;
> (7) The debtor had removed or concealed assets;
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) The transfer had occurred shortly before or shortly after a substantial debt was incurred; and
> (11) The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

HRS § 651C-4(b).

right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.*

To protect transferees of fraudulent conveyances, HUFTA provides

several defenses and protections, depending on which HUFTA subpart governs the

conveyance. Relevant to § 651C-4(a), "[a] transfer or obligation is not voidable

. . . against a person who took in good faith and for a reasonably equivalent value

or against any subsequent transferee or obligee." *Id.* § 651C-8(a). Transfers under

§ 651C-5(b) will not be voidable:

> (1) To the extent the insider gave new value to or for the
> benefit of the debtor after the transfer was made unless the new
> value was secured by a valid lien;
>
> (2) If made in the ordinary course of business or financial
> affairs of the debtor and the insider; or
>
> (3) If made pursuant to a good-faith effort to rehabilitate the
> debtor and the transfer secured present value given for that
> purpose as well as an antecedent debt of the debtor.

*Id.* § 651C-8(f).[5]

Courts have interpreted HUFTA to provide two possible theories of

---

[5] HUFTA further provides that transfers under § 651C-4(a)(2) or § 651C-5 will not be voidable "if the transfer results from (1) Termination of a lease upon default by the debtor when the termination is pursuant to the lease and applicable law; or (2) Enforcement of a security interest in compliance with Article 9 of the Uniform Commercial Code." HRS § 651C-8(e).

recovery: "1) actual intent to defraud; and 2) reasonably equivalent value." *In re Agric. Research & Tech. Group, Inc. v. Hayes*, 916 F.2d 528, 534 (9th Cir. 1990). Under this second theory, "any transfer whereby the transferee gives less than 'reasonably equivalent value' in exchange for the transfer from the debtor [] and has the effect of reducing the [debtor's] assets by a certain sum may also be avoided." *Id.*

### 2.    *The Allegations in the Amended Complaint Satisfy Rule 9(b)*

Plaintiffs have pled facts with sufficient particularity to support a cause of action for fraudulent conveyance under HRS §§ 651C-4(a)(1), 651C-4(a)(2)(b), and 651C-5(a).[6]

To state a claim pursuant to HRS § 651C-4(a)(1), Plaintiffs must plead that they are creditors of Milgroom, that Milgroom transferred the Hawaii Property before or after Plaintiffs' claim arose, and that Milgroom "acted with actual intent to hinder, delay, or defraud" his creditors.  In support of their creditor status, Plaintiffs allege that they filed the Massachusetts Action in 1987 seeking approximately $4,000,000 in damages.  Am. Compl. ¶ 9.  The Massachusetts Action continued for many years and no final judgment was entered at any time

---

[6] At the October 29, 2007 hearing, Plaintiffs' counsel represented that they were relying on HRS §§ 651C-4(a)(1), 651C-4(a)(2)(b), and 651C-5(a) for their HUFTA claim.

prior to the Hawaii Property transfer to Martl.[7]  *Id.* ¶¶ 9, 42.  Given that the definition of "creditor" includes individuals whose right to payment is not yet reduced to judgment, Plaintiffs under these facts may be afforded creditor status under HUFTA.  *See* HRS § 651C-1 (defining a "claim" of a creditor as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.").

In describing the "conveyance," Plaintiffs have alleged that:
(1) Milgroom and Martl purchased the Hawaii Property on August 2, 2002 with $5.2 million cash, Am. Compl. ¶¶ 24, 26; (2) the $5.2 million cash is traceable to Milgroom's $10 million net worth, *id.* ¶ 26; (3) Milgroom transferred the Hawaii Property to Martl on May 13, 2003, *id.* ¶ 29; and (4) during their divorce, Milgroom signed a release of marital interest in the Hawaii Property.  *Id.* ¶ 36. Finally, Plaintiffs have alleged that Milgroom transferred the Hawaii Property to Martl with actual intent to hinder, delay or defraud the Valvanis Family with respect to their claims raised in the Massachusetts Action.  *Id.* ¶ 69.

---

[7]  Milgroom argues that because a Special Master in the Massachusetts Action found in his favor in 1994 and from 1994-2005 the Massachusetts Action was relatively inactive, he had the right to make the Hawaii Property transfer.  The court addresses this argument in depth in denying the motions for summary judgment, and does not weigh facts outside of the complaint in denying the motions to dismiss.

Plaintiffs' specific allegations regarding their creditor status and the Hawaii Property transfer meet the "who, what, when, where, and how" requirements of Fed. R. Civ. P. 9(b) and are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (citation and quotation signals omitted). Further, Plaintiffs' general averment that Milgroom transferred the property with actual intent is sufficient for Rule 9(b). *See GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed.").

To state a claim under HRS § 651C-4(a)(2)(B), Plaintiffs, in addition to pleading their creditor status and that Milgroom transferred property, must plead that Milgroom (1) did not receive "a reasonably equivalent value in exchange for the transfer," and (2) "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Similar to HRS § 651C-4(a)(2)(B), HRS § 651C-5(a) requires that (1) Milgroom did not receive a reasonably equivalent value in exchange for the Hawaii Property transfer, (2) Milgroom was insolvent at the time of the Hawaii Property transfer, or became insolvent as a result of the transfer, and (3) Plaintiffs were present creditors of Milgroom at the time of the Hawaii

Property transfer.  In support of both these claims, Plaintiffs have alleged that

(1) in return for the 2003 Hawaii Property transfer, Martl paid no consideration,

"or, in the alternative, Milgroom did not receive reasonably equivalent value in

exchange for the transfer," Am. Compl. ¶ 29; and (2) as a result of the Hawaii

Property to transfer to Martl, Milgroom became insolvent.  *Id.* ¶ 30.  Further, since

Plaintiffs' "claim" arose prior to the Hawaii Property transfer, Plaintiffs have

alleged that they are present creditors of Milgroom.  Like the claim under

HRS § 651C-4(a)(1), these allegations in support of claims under

HRS §§ 651C-4(a)(2)(B) and 651C-5(a) are specific enough to meet the

requirements of Rule 9(b).  For these reasons, the court DENIES Defendants'

motions to dismiss.

**B.     Summary Judgment**

   ***1.     Summary Judgment Is Denied for Count I***

           Defendants raise several factual and legal arguments for summary

judgment of Count I.  The court finds none of them persuasive.

         *a.     Martl's knowledge and/or intent*

            Martl argues that the Amended Complaint is deficient as to her

because Plaintiffs did not specifically allege that she acted with intent to defraud,

and that Plaintiffs have no evidence of intent.[8]  These arguments are legally deficient.

In describing the elements of a fraudulent transfer, HUFTA only addresses the intent of the debtor:  "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the *debtor* made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  HRS § 651C-4(a)(1) (emphasis added).[9]  The intent of the transferee, therefore, is not a necessary element of a HUFTA claim.  The transferee's *knowledge*, however, becomes relevant in determining the available defenses to a HUFTA claim.  *See, e.g.,* HRS § 651C-8 ("A transfer or obligation is not voidable under section 651C-4(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.").

The transferee is nonetheless a necessary party to a HUFTA action.  "[A] transferee who retains title to the subject property or who claims an interest in the property or its proceeds . . . is a necessary party to any action seeking to set aside the transfer.  Such an action for relief against a transfer alleged to be

_____

[8]  In support of her argument, Martl relies on evidence outside of the Amended Complaint.  Accordingly, the court treats this argument as one for summary judgment, and not a motion to dismiss.

[9]  Like HRS § 651C-4(a)(1), HRS §§ 651C-4(a)(2)(B) and 651C-5(a) do not require the knowledge/intent of the transferee as a part of a HUFTA claim.

fraudulent should be brought pursuant to [HUFTA] . . . ." *Tanaka v. Nagata*, 76 Haw. 32, 36, 868 P.2d 450, 454 (1994).  The transferee must be a party because "[f]undamental principles of due process require that transferees who claim an interest in real property or its proceeds have a full and fair opportunity to contest claims of fraudulent transfer."  *Id.* at 37, 455.

Plaintiffs seek to avoid the Hawaii Property transfer from Milgroom to Martl.  As Martl is the transferee, Plaintiffs need not prove Martl's intent to maintain their HUFTA claim.  Martl is a necessary party to this action.

> b.     *Milgroom's knowledge and/or intent*

Defendants argue that Plaintiffs cannot prove that Milgroom had the requisite intent necessary for a HUFTA claim.[10]  Milgroom contends that he had no knowledge of Plaintiffs' claims from 1994-2005 because a Special Master in the Massachusetts Action found in Milgroom's favor in 1994.  According to his declaration, the Massachusetts Action remained inactive from 1994-2005 such that Milgroom had no reason to believe that Plaintiffs were creditors.  Milgroom Decl. ¶ 3(a).  This argument lacks merit.

"When an issue requires determination of state of mind, it is unusual

---

[10]  Because Martl's intent/knowledge is not a necessary element of Plaintiffs' HUFTA claim, the court addresses only the knowledge/intent of Milgroom here.

that disposition may be made by summary judgment." *Consol. Elec. Co. v. U.S. for Use and Benefit of Gough Indus., Inc.*, 355 F.2d 437, 438 (9th Cir. 1966); *see also SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978) ("The courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue."). However, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. Instead, the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial.'" *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (*quoting* Fed. R. Civ. P. 56(e)).

Plaintiffs have set forth specific facts raising a genuine issue of fact of Milgroom's knowledge of his creditors. The Special Master's Report in the Massachusetts Action was not a final decision. Plaintiffs pressed on in the Massachusetts Action, and Milgroom knew of and participated in the Massachusetts Action after the Special Master's Report. Specifically, both parties filed motions for extensions to file objections, Pls.' Ex. J, Milgroom's attorney filed a motion to withdraw, *id.*, and Milgroom appeared pro se. Pls.' Ex. F, M ¶¶ 12, 18. Given this evidence, there is a question of fact whether Milgroom knew of Plaintiffs' creditor status, and, as required by HRS § 651C-4(a)(1), intended to

defraud his creditors.  *See In re Agric. Research and Tech. Group, Inc.*, 916 F.2d at 534 (noting that "a court may make a finding of fraudulent intent . . . on the basis of circumstantial evidence; direct proof . . . will rarely be available." (citation and quotation signals omitted.))  Accordingly, the court DENIES summary judgment on this basis.

        c.      *The Hawaii Property held in tenancy by the entirety*

Defendants argue that because they initially purchased the Hawaii Property as tenants by the entirety, the Hawaii Property cannot properly be subject to the claims of Milgroom's creditors.  The court rejects this argument.

In a tenancy by the entirety, "neither husband nor wife has a separate divisible interest in the property held by the entirety that can be conveyed or reached by execution."  *Sawada v. Endo*, 57 Haw. 608, 614, 561 P.2d 1291, 1295 (1977).  Therefore, "an estate by the entireties is not subject to the claims of his or her individual creditors during the joint lives of the spouses."  *Id*. at 612, 561 P.2d at 1295.   This rule creates no unfairness to creditors:  "If the debt arose prior to the creation of the estate, the property was not a basis of credit, and if the debt arose subsequently the creditor presumably had notice of the characteristics of the estate which limited his right to reach the property."  *Id.* at 616, 561 P.2d at 1296. (citations omitted).

Despite the general protection against creditors that a tenancy by the entirety enjoys, "the creation of the tenancy by the entirety may not be used as a device to defraud existing creditors." *Id.* (citations omitted); *see also In re Estate of Wall*, 440 F.2d 215, 219 (D.C. Cir. 1971) ("This is not to say, however, that rights and remedies of existing creditors can be obliterated by the simple expedient of erecting a tenancy by the entireties in property that is otherwise vulnerable.").

Plaintiffs argue that the creation of the tenancy by the entirety was for the purpose of defrauding the Valvanis Family,[11] *see* Pls.' Br. at 28-30, and they have submitted evidence to support this allegation. As discussed above, it is a question of fact whether Milgroom knew of the Massachusetts Action and Plaintiffs' creditor status. Further, the circumstances of the Hawaii Property transfer and Defendants' marriage raise a fact question whether Defendants purchased the Hawaii Property as tenants by the entirety for the purpose of defrauding Milgroom's creditors. *See In re Agric. Research & Tech. Group, Inc.*, 916 F.2d at 534 (noting that "a court may make a finding of fraudulent intent . . . on the basis of circumstantial evidence; direct proof . . . will rarely be available."

---

[11] During the October 29, 2007 hearing, Plaintiffs' counsel stated that Plaintiffs intended to amend the Amended Complaint to specifically allege that Defendants created the tenancy to defraud creditors.

(citation and quotation signals omitted.))

Plaintiffs have submitted evidence raising questions about the source of the funds used to purchase the Hawaii Property.[12]  Martl alleges that "the funds used to purchase the Hawaii Property were solely my own, and were wired to Hawaii from a German bank account solely under my name and control."  Martl Decl. ¶ 4.  Martl also admits, however, that this German bank account may have included "some funds I received in sharing Milgroom's property in consideration for giving up" her real estate business.[13]  *Id.* ¶ 13. Moreover, the Hawaii Property payment did not come directly from the German bank account.  On July 12, 2002, $6,499,982 was wire transferred from a German bank account to First Hawaiian

---

[12]  The court also notes that Defendants purchased the Hawaii Property just two weeks after a Massachusetts court in *D'Ambrosio et al. v. Milgroom et al.*, docket number 02E-0003, denied Milgroom's motion to dismiss.  Pls.' Ex. X, ¶ 9.  In *D'Ambrosio et al. v. Milgroom et al.*, the *D'Ambrosio* plaintiffs allege that Milgroom improperly transferred his wife's funds before her death.  It appears that Defendants filed for divorce one month after the *D'Ambrosio* court ordered Milgroom to post a $900,000 bond.  *Id.* ¶ 47.

[13]  Plaintiffs also submitted evidence calling into question several of Martl's statements in her Declaration, and argue that the Martl Declaration should be disregarded due to these misrepresentations and/or omissions.  For example, Martl claims that the "funds used to purchase the Hawaii Property were solely my own," Martl Decl. ¶ 4, but Plaintiffs have submitted evidence showing that Milgroom transferred the funds to purchase the Hawaii Property.  Ueno Decl. ¶ 17.  Martl further states that the funds used to purchase the Hawaii Property were from her interest in her real estate business before she met Milgroom, Martl. Decl. ¶ 13,  but Plaintiffs have submitted evidence showing that Milgroom was a shareholder and owner of both these companies.  Pls.' Ex. 6.  As Plaintiffs submitted evidence raising the factual issue of Martl's knowledge, the court need not determine Plaintiffs' request for the court to disregard Martl Declaration.

Bank and deposited into a joint checking account of Defendants.  Ueno Decl. ¶ 17,

Ex. E.  Milgroom then drew a check from this account for $7,125,000 payable to

Milgroom.  *Id.*  This check was deposited into a different joint savings account of

Defendants, from which funds to pay for the Hawaii Property were drawn.  *Id.*

Milgroom later transferred his interest in the Hawaii Property to Martl

on May 13, 2003, and signed a release of marital interest in the Hawaii Property

during their divorce in 2005, each time for no consideration.  Martl Ex. C; Pls.'

Ex. K.  During their divorce (which became final in only two weeks), Defendants

declared under penalty of perjury that they had no expenses, income, or any other

major assets other than a 2005 BMW and the Hawaii Property.  Pls.' Ex. K.  Just

two weeks after the divorce decree, Milgroom declared bankruptcy.  Pls.' Exs. K,

P.  After the divorce, Martl continued to support Milgroom financially.  Pls.' Ex.

X, ¶ 130.  These facts raise an issue whether Defendants divorced to evade

Milgroom's creditors, and therefore calls into question the validity of the original

Hawaii Property purchase.  Indeed, based on the evidence before it, the bankruptcy

court found that Plaintiffs "produced compelling evidence that [Milgroom] has

engaged in fraudulent real estate and financial transactions with his wife, and then,

ex-wife Martl, between 2002 and the present."  Pls.' Ex. S at 12.

Under these circumstances, whether the creation of the tenancy by the

entirety was for the purpose of defrauding Milgroom's creditors is a question of fact.

### d.    Defendants' remaining arguments

The court addresses and dismisses Defendants' remaining arguments that the Hawaii Property transfer to Martl is insulated as a matter of law.

First, Defendants argue that Plaintiffs cannot prove that the conveyance of the Hawaii Property caused them any injury.  *See* Martl Br. at 20 (*quoting Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001)).  What Plaintiffs can ultimately prove is a question of fact.  Milgroom transferred his interest in the Hawaii Property for no consideration, and declared bankruptcy only two weeks after his divorce to Martl became final.  Pls.' Exs. K, P; Martl Ex. C.  Based on these facts, the Hawaii Property transfer may very well have caused injury by putting beyond Plaintiffs' reach property they otherwise would be able to subject to the payment of their debt.

Martl also argues that the Hawaii Property transfer was in the ordinary course of business pursuant to HRS § 651C-8(f)(2).  This defense applies only to transfers pursuant to HRS § 651C-5(b), which Plaintiffs apparently do not assert.  *See* HRS § 651C-8(f)(2) (listing scenarios under which a transfer pursuant to HRS § 651C-5(b) is not voidable).

Finally, Defendants argue that Martl takes benefit of the "preferential transfer" doctrine.  Specifically, Martl contends she had "claim" to Milgroom's money due to her agreement to marry him for half his worth, and Milgroom was entitled to prefer her as a creditor over Plaintiffs.  Under the preferential transfer doctrine, "it is not fraudulent for a debtor in failing circumstances to prefer one or more of his *bona fide* creditors to the exclusion of other creditors . . . ."  *Kekona v. Abastillas*, 113 Haw. 174, 183 n. 7, 150 P.3d 823, 832 n. 7 (2006) (*quoting In re Application of Sec. Inv. Co.*, 33 Haw. 364 (1935)).  This rule, however, applies only to those transfers that are *bona fide*.  *See Kekona*, 113 Haw. at 183, 150 P.3d at 832 (noting that preferential transfers may be fraudulent and subject to HUFTA).  As discussed above, whether Defendants engaged in a scheme to purchase the Hawaii Property, transfer Milgroom's interest to Martl, and divorce, are issues of fact.  Accordingly, summary judgment must be DENIED.

## 2.    *The Remaining Counts of the Complaint*

Defendants argue that if summary judgment is granted on the HUFTA claim, the remaining claims of the complaint must similarly fall.  Because the court finds that the HUFTA claim stands, this argument is without merit.  Below, the court addresses Defendants' remaining summary judgment arguments on each claim.

a.     *Count II – civil conspiracy*

Defendants argue that summary judgment must be granted for this count because (1) Plaintiffs have failed to plead conspiracy with particularity, and (2) there is no probative evidence of intent to conspire to defraud Plaintiffs.  The Court disagrees with both of these arguments.

"[T]he tort of conspiracy has not been clearly defined" in Hawaii case law.  *Weinberg v. Mauch*, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995) (citation and quotation signals omitted).  Nonetheless, "it is clear that there can be no civil claim based upon a conspiracy alone.  [If a plaintiff does] not set forth any actionable claim based upon deceit, there can be no claim against any alleged joint tortfeasor based solely upon conspiracy to deceive."  *Id.* (citation and quotation signals omitted); *Moore v. Brewster,* 96 F.3d 1240, 1245 (9th Cir. 1996)*; see also Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571 (1995) ("The indispensable elements of civil conspiracy include a wrongful act and knowledge on the part of the alleged conspirators of [the conspiracy's] unlawful objective.").

Determining "whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances that the alleged conspirators had a meeting of the minds and thus reached an

understanding to achieve the conspiracy's objectives." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 790 (9th Cir. 2001) (citation and quotation signals omitted); *see also Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71, 85 (9th Cir. 1969) (noting that "conscious parallel action, standing alone, is [in]sufficient to support a finding of conspiracy, in the absence of circumstances which logically suggest joint agreement, as distinguished from individual action" (citation and quotation signals omitted)).

Here, the underlying actionable tort for the conspiracy claim is the fraudulent transfer of the Hawaii Property.  Because the HUFTA claim meets the Rule 9(b) requirements, the conspiracy claim, to the extent it is directed to the fraudulent transfer of the Hawaii Property, similarly succeeds.[14]  While Plaintiffs did allege generally that Defendants committed "overt acts" in support of this claim, the Amended Complaint enumerates in previous paragraphs these acts supporting the HUFTA claim.

Plaintiffs have also raised a genuine issue of fact regarding Defendants' intent to conspire to defraud Milgroom's creditors.  Defendants argue

---

[14]  To the extent Plaintiffs allege that Defendants conspired to defraud Plaintiffs by transferring "other property," such allegation does not meet Rule 9(b) requirements, and no underlying tort regarding any other property is alleged.  *See* Am. Compl. ¶ 72 (alleging that Defendants "engaged in a scheme to perform overt acts, which intended to defraud and, in fact, succeeded in defrauding the Valvanis Family . . . by transferring the Hawaii Property, cash, and other property to Martl beyond the reach of Milgroom's creditors.").

that Milgroom "reasonably believed" the Massachusetts Action was resolved, and Martl had never heard of the Valvanis Family.  Martl Br. at 25.  As discussed *supra*, however, Plaintiffs have presented evidence raising issues of fact as to whether Defendants purchased the Hawaii Property and transferred it to Martl as part of a scheme to defraud Milgroom's creditors.

Defendants purchased the Hawaii Property on August 2, 2002 from funds that Martl admits may have come from Milgroom.  Martl Decl. ¶ 13; Martl Ex. C at 111-12.  Despite Martl's assertion that the funds used to purchase the Hawaii Property were solely her own, Martl Decl. ¶ 4, it was Milgroom who transferred the funds between various accounts to purchase the Hawaii Property.  Ueno Decl. ¶ 17; Pls.' Ex. L.  Milgroom later transferred his interest in the Hawaii Property to Martl on May 13, 2003, and signed a release of marital interest in the Hawaii Property during their divorce in 2005, each time for no consideration.  Martl Ex. C; Pls.' Ex. K.  During their divorce (which became final in only two weeks), Defendants declared under penalty of perjury that they had no expenses, income, or any other major assets other than a 2005 BMW and the Hawaii Property.  Pls.' Ex. K.  Just two weeks after the divorce decree, Milgroom declared bankruptcy.  Pls.' Exs. K, P.  After the divorce, Martl continued to support Milgroom financially.  Pls.' Ex. X, ¶ 130.

30

These circumstances suggest a "joint agreement" sufficient to defeat summary judgment on the conspiracy claim at this time.  *See Joseph E. Seagram & Sons, Inc.*, 416 F.2d at 85; *Radcliffe*, 254 F.3d at 790 (noting that a fact issue exists "so long as there is a possibility that the jury can infer from the circumstances that the alleged conspirators had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives.").  Summary judgment for this claim is therefore DENIED.

> ### b.    *Count III - common law fraudulent transfer*

Martl argues that for any claims against her that accrued subsequent to the Hawaii Property transfer, Hawaii common law requires proof that Martl had actual intent to defraud Plaintiffs when the property was conveyed.  Martl Br. at 26.  Martl's argument lacks merit.

To the extent that Plaintiffs have claims against Martl for actions that occurred after the Hawaii Property transfer, those claims would be separate from the common law fraudulent conveyance claim and seek separate damages.  Moreover, the case law cited by Martl, *Lippi v. City Bank*, 955 F.2d 599, 606-07 (9th Cir. 1992), which itself cites to *Metzger v. Lalakea*, 32 Haw. 706, 1933 WL 2386 (Apr. 26, 1933), is inapplicable to Martl as a transferee.  Rather, both cases address whether a conveyance of land can be successfully attacked by creditors of

the *grantor.  See Lippi*, 955 F.2d at 606-07 (stating that court's position "is

consistent with Hawaii's common law of fraudulent conveyance, which allows

subsequent creditors to set aside a conveyance only where it is shown that *the*

*debtor* conveyed with intent to defraud creditors") (emphasis added); *Metzger*,

1933 WL 2386, at *7 ("It is a firmly established principle that even a voluntary

conveyance of land cannot be successfully attacked by creditors of the grantor

who became such subsequent to the conveyance unless it was made with the intent

to defraud such subsequent creditors . . . ." (citation and quotation signals

omitted.))  Summary judgment cannot be granted on this basis.

> c.     *Count V[15] - injunction against further disposition of the Hawaii Property*

Defendants argue that summary judgment should be granted on this

claim for largely the same reasons that Plaintiffs' lis pendens should be expunged.

As discussed in the court's Order Denying Martl's Appeal of Magistrate Judge

Kevin S.C. Chang's October 16, 2007 Order, and Order Denying Defendants'

Request for Preliminary Injunction, the court does not find these arguments

persuasive.  Further, if Plaintiffs can prove the facts supporting their HUFTA

---

[15]  Martl raised no arguments for summary judgment of the Constructive and/or Resulting Trust and/or Equitable Lien Claim beyond that Plaintiffs have failed to adequately plead their fraud claims.  Accordingly, the court does not re-address those arguments.

claim, they may be entitled to an injunction preventing the further transfer of the Hawaii Property. *See* HRS § 651-C7 (enumerating potential creditor remedies including "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property"). As the request for injunction raises fact questions, summary judgment is inappropriate.

> d.    *Count VI - appointment of receiver*

Defendants argue that summary judgment should be granted on this claim because appointment of a receiver is a harsh remedy of last resort that Plaintiffs cannot justify.

"As a basis for the appointment of a receiver, the plaintiff must show, not only that he has an interest in or right to the fund or property, but that the possession of the property by the defendant was obtained by fraud; or that the property itself, or the income arising from it, is in danger of loss from the neglect, waste, misconduct or insolvency of the defendant." *Hawaii Nat'l Bank v. Cook*, 100 Haw. 2, 11, 58 P.3d 60, 69 (2002) (citation and quotation signals omitted.)) While the appointment of receiver is generally considered a remedy of "last resort," *Carl Corp. v. Dep't of Educ.*, 93 Haw. 155, 167, 997 P.2d 567, 569 (2000) (citation and quotation signals omitted), Plaintiffs have pled facts to support this claim. Summary judgment on this claim would be premature at this time.

33

> e.  *Count VII - spoliation of evidence*

During the October 29, 2007 hearing, Plaintiffs' counsel agreed that this claim is not presently pled with sufficient particularity.  Thus, the court DISMISSES this claim without prejudice.

> f.  *Count VIII - contempt of court*

During the October 29, 2007 hearing, Plaintiffs' counsel agreed that this claim should be dismissed.  Accordingly, the court DISMISSES this claim without prejudice.

///

///

///

///

///

///

///

///

///

///

# V.  **CONCLUSION**

For the reasons stated above, Defendants' Motions to Dismiss and/or for Summary Judgment are DENIED.

As a result of the court's ruling, the following claims against Defendants remain: Fraudulent Conveyance Under HRS ch. 651C; Civil Conspiracy to Defraud; Common Law Fraudulent Transfer; Constructive and/or Resulting Trust and/or Equitable Lien; Injunction Against Further Disposition of the Hawaii Property; and Appointment of Receiver.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 13, 2007.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Valvanis et al. v. Milgroom et al.*, Civ. No. 06-00144 JMS/KSC, Order Denying Defendants' Motions to Dismiss and/or for Summary Judgment

35