IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARY VALVANIS, JOHN VALVANIS, and GEORGE VALVANIS,<br><br>          Plaintiffs,<br><br>   vs.<br><br><br>ROBERT B. MILGROOM AND NADA R. MARTL AKA NADA R. MILGROOM,<br><br>          Defendants. | ) CIVIL NO. 06-00144 JMS-KSC<br>)<br>) FINDINGS AND<br>) RECOMMENDATION TO GRANT IN<br>) PART AND DENY IN PART<br>) PLAINTIFFS' MOTION FOR<br>) DEFAULT JUDGMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY
IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

        Before the Court is Plaintiffs Mary Valvanis,

John Valvanis, and George Valvanis' (collectively

"Plaintiffs") Motion for Entry of Default Judgment,

filed March 5, 2008.  On March 19, 2008, Defendant Nada

Martl ("Martl"), through counsel, filed an Opposition.

On March 21, 2008, Martl personally filed a Motion to

Set Aside Entry of default and/or Judgment, which the

Court construed as her Opposition to the Motion.[1]  On

_____

        [1] On March 20, 2008, Defendant Robert Milgroom
("Milgroom") filed a Declaration in Support of Nada

April 3, 2008, Plaintiffs filed their Reply.

This matter came on for hearing on April 14, 2008.  Brian Duus, Esq., appeared on behalf of Martl. Ted Pettit, Esq., appeared on behalf of Plaintiffs. After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, the Court FINDS AND RECOMMENDS that Plaintiffs' Motion be GRANTED IN PART AND DENIED IN PART.

<u>BACKGROUND</u>

As the parties and the Court are familiar with the extensive background of this case, the Court will limit the background to those facts relevant to the

_____

Martl's Motion to Set Aside Entry of Default and/or Judgment Against Nada Martl.  On April 1, 2008, Christian Maertl ("Maertl"), Martl's son, filed a Declaration in Opposition to the Motion.  Although the Court has reviewed these Declarations, said Declarations shall have no bearing on the outcome of the Motion.  The Court has already cautioned Milgroom and Maertl that they are not permitted to file papers on behalf of Martl, as such conduct constitutes the unauthorized practice of law.  Milgroom and Maertl continue to act in contravention of the Court's order and are hereby warned that further disobedience may result in the imposition of sanctions.

instant Motion.

On December 14, 2007, Plaintiffs filed a Request for Entry of Default against Defendant Nada Martl ("Martl"), and the Clerk of Court entered default the same day.[2]  On December 19, 2007, Martl filed a motion to set aside the entry of default, which the Court denied.  Martl subsequently filed an appeal of the Court's Order Denying Martl's Motion to Set Aside Default Against Nada R. Martl, aka Nada R. Milgroom.

On February 28, 2008, United States District Judge J. Michael Seabright entered an Order Affirming Magistrate Judge Kevin S.C. Chang's February 7, 2008 Order Denying Motion to Set Aside Entry of Default Against Defendant Nada R. Martl.  Judge Seabright determined, as did this Court, that Plaintiffs would suffer prejudice if default were set aside because 1) Martl has failed to participate in this litigation by neglecting to communicate with her attorneys and/or the

---

[2]  This is the second time the Clerk of Court entered default against Martl.

3

Court and 2) this could allow for collusion between

Defendants, as Milgroom and Maertl reside at the same

address in Boca Raton, Florida.[3]

<u>DISCUSSION</u>

Plaintiffs argue that the Court should enter

default judgment against Martl as to all allegations in

the First Amended Complaint: 1) fraudulent transfer

under Hawaii Revised Statutes ("HRS") Chapter 651C –

Hawaii Uniform Fraudulent Transfer Act ("HUFTA") (Count

I); 2) civil conspiracy to defraud (Count II); 3)

common law fraudulent transfer (Count III); 4)

constructive and/or resulting trust and/or equitable

lien (Count IV); 5) injunction against further

disposition of the Hawaii property (Count V); and 6)

appointment of a receiver (Count VI).[4]  As damages for

---

[3]  Martl granted Maertl power of attorney, which he
has abused by acting as Martl's attorney at law (versus
attorney in fact), thereby engaging in the unauthorized
practice of law, i.e., filing a number of motions,
declarations, and letters on Martl's behalf.

[4]  Counts VII and VIII of the First Amended
Complaint were dismissed without prejudice in the Order
Denying Defendants' Motion to Dismiss and/or for

these claims, Plaintiffs seek remedies set forth in HRS § 651C-7, attorneys' fees pursuant to HRS § 607-14, costs, and punitive damages.  Plaintiffs contend that default judgment is appropriate because of they will suffer prejudice if recovery is delayed; Martl's default was not due to excusable neglect; and there is no possibility of illogical, divergent outcomes as between Milgroom and Martl.

Martl counters that because her liability is predicated upon Milgroom's liability, it is inappropriate to enter default judgment until all claims against Milgroom are resolved.  However, she posits that if the Court is inclined to grant the Motion, the only remedy available to Plaintiffs under HRS Chapter 651C is the voidance of the transfer. Martl challenges Plaintiffs' request for punitive damages and attorneys' fees as inconsistent.  In Martl's personal Opposition, she argues that her

_____

Summary Judgment ("SJ Order"), issued by Judge Seabright on November 13, 2007.

attorney's failure to file the requisite documents resulted in the entry of default.

Under Federal Rule of Civil Procedure ("FRCP") 55(b)(1), the Clerk of the Court may enter default judgment for the plaintiff if the defendant has defaulted by failing to appear and plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]" See Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the court for default judgment. See Rule 55(b)(2). If the defendant has appeared in the action, the plaintiff must serve written notice of the application on the defendant at least three days prior to the hearing. The court may conduct an evidentiary hearing "[i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter[.]" Id.

"'The general rule of law is that upon default

the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)). However, a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right. See Warner Bros. Entm't Inc. v. Caridi, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004). Default judgments are disfavored; cases should be decided on the merits if possible. See In re Roxford Foods, Inc., 12 F.3d 875, 879 (9th Cir. 1993). Thus, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." VonGrabe v. Sprint PCS, 312 F. Supp. 2d 1313, 1319 (S.D. Cal. 2004) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)).

In determining whether to grant default judgment, the court should consider the following factors:

(1) the possibility of prejudice to the
plaintiff,
(2) the merits of the plaintiff's
substantive claim,
(3) the sufficiency of the complaint,
(4) the sum of money at stake in the
action,
(5) the possibility of a dispute
concerning material facts,
(6) whether the default was due to
excusable neglect, and
(7) the strong policy underlying the
Federal Rules of Civil Procedure favoring
decisions on the merits.

Warner Bros., 346 F. Supp. 2d at 1071-72 (quoting Eitel

v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).   In

addition, a court can deny default judgment where the

defendant has appeared and actively defends against the

plaintiff's claims.   See VonGrabe, 312 F. Supp. 2d at

1319.

A.   Entering Default Judgment Against Less than All
     Defendants

Martl argues that it is inappropriate to enter

default judgment until all claims against Milgroom are

resolved because her liability is predicated upon his

liability.   Plaintiffs counter that the Court may enter

default judgment against fewer than all Defendants,

particularly because there is no possibility of illogical, divergent outcomes as between Martl and Milgroom.  The Court agrees.

Ordinarily, "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants."  In re First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2001) (citing Frow v. De La Vega, 82 U.S. 552 (1872)).  This is because it would be incongruous and unfair to allow a plaintiff to prevail against a defaulting defendant on legal theories that have been or are ultimately rejected. Id.

In this case, the claims against Milgroom and Martl involve the same underlying facts.  However, Martl's liability is not predicated upon Milgroom's liability.  First, Plaintiffs have alleged joint and several liability against Milgroom and Martl in the First Amended Complaint.  Second, as the Court

9

discusses *infra*, Martl, as a transferee, may be held liable without regard to her intent or Milgroom's intent.  In other words, there is a separate basis, under HRS § 651C-5, to find Martl liable.  This is not a case where each defendant is entirely responsible for the damages to Plaintiffs.  Rather, a finding of liability against Martl does not require a finding of liability as to Milgroom.

Martl relies upon <u>In re Uranium Antitrust Litigation</u>, 617 F.2d 1248 (7th Cir. 1980) to support her position that default judgment should not be entered until all claims against Milgroom are resolved.  Her reliance is misplaced.  The <u>In re Uranium</u> court explained that "to apply Frow to a claim of joint and several liability is to apply that venerable case to a context for which it was never intended, and ignores the several or independent aspects of the claim."  <u>Id.</u> at 1257.  In cases of joint and several liability, when "different results as to different parties are not logically inconsistent or contradictory," adherence to

<u>Frow</u> is unnecessary.   <u>Id.</u>

Here, the entry of default judgment against Martl would not be logically inconsistent or contradictory.   Therefore, "the entry of default judgment can be viewed as a simple exercise in the procedures set out in Rule 54 and 55 of the Federal Rules of Civil Procedure."   <u>Id.</u> at 1258.   Rule 54(b) permits the Court to direct the entry of final judgment as to fewer than all parties "only if the court expressly determines that there is no just reason for delay."   Fed. R. Civ. P. 54(b).   As the Court will further explain below, there is no just reason for delay.

B.   <u>Eitel Factors</u>

Upon consideration of the <u>Eitel</u> factors, the Court finds that the entry of default judgment against Martl is appropriate.   The Court will address each factor in turn.

1.   <u>Possibility of Prejudice to Plaintiffs</u>

Plaintiffs will suffer substantial prejudice if

this action proceeds against Martl.  Although she is currently represented by Mr. Gierlach and Mr. Duus and has submitted papers *pro se*, the Court is unable to ascertain whether she is actively participating in this case, or whether she has any knowledge about the current status of the case.  Mr. Gierlach has represented, and it is clear from the evidence before the Court, that Martl has not been in communication with him for some time.

Further, the papers filed by Martl purportedly bear her signature, but the Court has no way to verify that she is the person signing and filing the papers. The Court has serious concerns that Milgroom, not Martl, is the individual drafting and filing the papers.  The Court has received filings from Milgroom, Maertl, and Martl that are more or less identical. This is of particular concern given that Maertl and Milgroom reside at the same address, which leads the Court to believe that Defendants are colluding. Indeed, Milgroom and Maertl continue to file documents

12

on Martl's behalf, which repeatedly espouse the same
factual and legal arguments, despite the fact that
neither Milgroom nor Maertl is licensed to practice law
in Hawaii.  Milgroom and Maertl have additionally made
representations about Martl's positions concerning
various matters, which would appear to indicate that
they are in communication with Martl.  Yet when asked
to verify her whereabouts or current address, they
claim only to know that she is somewhere in Germany.

Even after repeated requests, the Court has yet
to receive verification of Martl's current address.
Recent filings list the same Boca Raton, Florida
address for Milgroom, Martl, and Maertl, and certain
documents imply that Martl now resides at that address.
However, Martl herself represented in her Opposition
that she is sick in Europe and has been unable to
return to Florida.  When asked about Martl's
whereabouts at a recent hearing, Milgroom stated that
she is at an unknown location, possibly a hospital, in
Germany.  Thus, while someone might be defending on

13

Martl's behalf, her apparent lack of involvement and/or communication with the Court and her attorneys weighs heavily in favor of default judgment.  Plaintiffs will be prejudiced if the case proceeds without a means by which to communicate with Martl.  There is no reason for any further delay.

    2.  Merits of Plaintiffs' Substantive Claims

    Plaintiffs have provided a significant amount of evidence to support their HUFTA claim as to Martl. Specifically, Plaintiffs have offered evidence demonstrating that as creditors under HUFTA, their claims arose prior to the transfer of the subject property; Milgroom transferred the subject property to Martl for no consideration; and Milgroom became insolvent as a result of the transfer.  See, e.g., Haw. Rev. Stat. § 651C-5.[5]  Moreover, there is compelling

---

    [5]  HRS § 651C-5 provides:

    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the

evidence that the monies used to purchase the subject property originated from Milgroom and not Martl. Reply, Exs. 4-6.

In his SJ Order, Judge Seabright held that because Martl is the transferee, Plaintiffs need not prove her intent to maintain their HUFTA claim.  SJ Order at 20.  Plaintiffs are therefore able to request that judgment be entered against Martl, as first transferee of the subject property, pursuant to HRS § 651C-8.  <u>See</u> Haw. Rev. Stat. § 651C-8 ("[T]o the extent a transfer is voidable in an action by a creditor under section 651C-7(a)(1), the creditor may recover judgment . . . against . . . [t]he first transferee of the asset or the person for whose benefit the transfer was made.").  The facts and evidence proffered in support

---

obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.

of the HUFTA claim tend to provide a basis for Plaintiffs' other related claims in the First Amended Complaint as well.  Accordingly, this factor weighs strongly in favor of default judgment.

   3.   <u>Sufficiency of the First Amended Complaint</u>

        The sufficiency of the First Amended Complaint also weighs in favor of default judgment.  In the SJ Order, Judge Seabright concluded that the allegations in the First Amended Complaint were sufficiently pled and supported by facts so as to defeat dismissal and summary judgment.  Therefore, the Court finds that the First Amended Complaint is sufficient as against Martl.

   4.   <u>Sum of Money at Stake</u>

        The fourth <u>Eitel</u> factor slightly weighs against the entry of default judgment.  Plaintiffs request $100,000.00 in punitive damages, as well as $118,976.00 in attorneys' fees and $7,530.40 in costs.  The other relief sought by Plaintiffs are equitable and/or provisional in nature.  However, the Court notes that an award of these provisional and/or equitable remedies

16

would result in 1) the attachment of the real and personal property located at 253 Puuikena Drive ("subject property") as security for the nearly $4 million Massachusetts judgment against Milgroom and 2) the potential sale of the subject property to satisfy said judgment.

   5.   Possibility of Dispute Concerning Material Facts

        Based on the evidence currently before the Court, there is little dispute as to the material facts related to Martl. Like Milgroom, Martl repeatedly and primarily relies upon an unadopted Special Master's Report from Massachusetts to negate fraudulent intent in the transfer of the subject property. However, Judge Seabright found that this report was not a final decision; that Plaintiffs and Milgroom pressed on with the Massachusetts action after the issuance of the report; that Milgroom's attorney withdrew; and that Milgroom appeared *pro se*. SJ Order at 21. In light of these findings, Judge Seabright concluded that there existed questions of fact about Milgroom's knowledge of

Plaintiffs' creditor status.  Id.  As the Court

previously discussed, Plaintiffs need not prove Martl's

intent as a transferee to maintain their HUFTA claim.

See id.  Martl has not presented evidence to rebut

Plaintiffs' allegations, supported by substantial

evidence, that their claims arose prior to the transfer

of the subject property; that Martl received the

subject property for no consideration; and that

Milgroom became insolvent as a result of the transfer.

Neither has Martl offered evidence related to the other

claims alleged by Plaintiffs.  Consequently, this

factor weighs in favor of entering default judgment.

     6.   Whether Default was Due to Excusable Neglect

          Martl's culpable conduct has led to the entry

of default.  This factor therefore weighs in favor of

default judgment.  The Court has twice entered default

against Martl.  Moreover, this Court already denied her

motion to set aside the entry of default, and Judge

Seabright affirmed that decision.  The Court has

presented Martl with opportunities to appear and/or to

18

provide declarations to verify her whereabouts, but Martl has declined to so oblige.  Had Martl appeared prior to or at the hearing on the motion to set aside the entry of default, the Court might have been in a position to grant the motion.  However, she did not appear, and although she has recently started to file documents *pro se*, the Court has no assurances that she is personally signing the documents, or that she is fully apprised of the current status of the case.  It being fairly evident that Martl communicates with Maertl and Milgroom, there is no excuse for her failure to appear or provide the Court with an affidavit or declaration disclosing her address.

Mr. Gierlach and Mr. Duus have made a number of attempts to withdraw as counsel.  Each time, the Court has denied the motion because of their failure to comply with Local Rule 83.6's address requirement. Milgroom has appeared by phone at most, if not all, of the hearings related to the withdrawal so he is well aware that the Court seeks Martl's current address.

Assuming he has relayed this message to Martl, her
failure to respond evidences a conscious choice avoid
any meaningfully participation in this case.
Therefore, the Court finds that Martl's inaction led to
entry of default and continues to preclude the Court
from setting aside the default.

    7.   <u>Policy Favoring Decisions on the Merits</u>

        Although the Court recognizes the strong policy
favoring resolution of cases on their merits,
proceeding with the instant litigation against Martl
would be futile and frustrate the Court's ability to
manage its docket, given Martl's failure to communicate
with her attorneys, Plaintiffs, and the Court.  The
lack of communication will only serve to unnecessarily
delay this case, which has been pending since 2006,
albeit stayed for the portion of the time.  Hence, this
factor does not weigh against the entry of default
judgment.

        In sum, the Court finds that the foregoing
factors weigh in favor of entering default judgment

against Martl.

C.   <u>Relief and/or Damages Sought</u>

Plaintiffs request a number remedies, including:  avoidance of the transfer; attachment of the subject property as security for the satisfaction of the Massachusetts judgment; sale of the subject property; appointment of a receiver; injunction; equitable lien; constructive trust; $100,000.00 in punitive damages; $118,976.00 in attorneys' fees; and $7,530.40 in costs.  The Court finds that Plaintiffs are entitled to some, but not all, of the relief and/or damages sought.

1.   <u>Avoidance of Transfer, Attachment, Appointment of Receiver, Injunction</u>

Plaintiffs seek avoidance of the transfer of the subject property, attachment, appointment of a receiver, and an injunction, all of which are remedies available under HRS § 651C-7.  Martl's counsel concedes that avoidance of the transfer is an appropriate remedy if the Court enters default judgment.  Hawaii Revised Statutes § 651C-7 provides:

21

(a) In any action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations provided in section 651C-8, may obtain:

> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 651;

> (3) Subject to applicable principles of equity and in accordance with applicable civil rules of procedure:

>> (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

>> (B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

>> (C) Any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor may, if the court so orders, levy execution on the asset transferred or its proceeds.

Haw. Rev. Stat. § 651C-7.  In light of the Court's

recommendation that the district court enter default judgment against Martl, HRS § 651C-7(a)(1) clearly authorizes the Court to avoid the transfer, order attachment of the subject property, issue an injunction, and appoint a receiver.  Accordingly, the Court recommends that district court:  1) avoid the transfer of the subject property, with Martl and Milgroom to hold the subject property as joint tenants; 2) order an attachment of the real and personal property located at the subject property as security for the satisfaction of the Massachusetts judgment, in accordance with the procedures set forth in HRS Chapter 651; 3) appoint a receiver to take possession and control of the subject property, including the personal property therein, with Plaintiffs to submit names for potential receiver candidates; and 4) issue an injunction preventing further disposition of the subject property by Milgroom, Martl, or Maertl, or anyone acting on their behalf.

    2.   <u>Execution Against the Subject Property</u>

Plaintiffs request that the Court order the sale of the subject property, with the proceeds to satisfy the Massachusetts judgment.  The Court recommends that the district court deny this request without prejudice.  If Plaintiffs wish to execute upon the attached property, they should file a formal motion or request and follow the procedures set forth in HRS Chapter 651.

3.   <u>Equitable Lien/Constructive Trust</u>

Given the recommendation that the district court grant all of the remedies available under HRS § 651C-7, the Court finds that an equitable lien and/or constructive trust is unnecessary.

4.   <u>Punitive Damages</u>

Plaintiffs request $100,000.00 in punitive damages for Martl's conspiracy to defraud them by participating in an overt act, arguing that said amount is appropriate in light of the transfer of $4.2 million dollars from Milgroom to Martl.  Martl asserts that Plaintiffs cannot seek punitive damages where they also

24

claim that they are entitled to attorneys' fees under the assumpsit statute, as punitive damages are not available as a remedy for breach of contract.

The Court recommends that the district court deny Plaintiffs' request for punitive damages. Punitive damages are "damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future." Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc., 115 Hawai'i 232, 297, 167 P.3d 225, 290 (2007) (quoting Masaki v. Gen. Motors Corp., 71 Haw. 1, 6, 780 P.2d 566, 570 (1989) (citations omitted)) (quotations omitted).

> In order to recover punitive damages, "[t]he plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences."

Id. (quoting Masaki, 71 Haw. at 16-17, 780 P.2d at 575

(citation omitted)).  In cases involving wrongdoing by

the defendant that "has been intentional and

deliberate, and has the character of outrage frequently

associated with crime, all but a few courts have

permitted the jury to award . . . [punitive damages.]"

Masaki, 71 Haw. at 6, 780 P.2d at 570 (quotations

omitted) (alteration in original).

    The defendant's mental state is a primary focus

of the inquiry in determining whether punitive damages

are appropriate.  Id.  "[T]o justify an award of

punitive damages, 'a positive element of conscious

wrongdoing is always required.'  Thus, punitive damages

are not awarded for mere inadvertence, mistake, or

errors of judgment."  Id.  (citation omitted).

    Here, Plaintiffs have not proven, by clear and

convincing evidence, that Martl has acted "wantonly or

oppressively or with such malice as implies a spirit of

mischief or criminal indifference to civil

obligations."  To determine whether the award of

punitive damages is appropriate, the Court primarily
focuses on the defendant's mental state.  Insofar as
the evidence related to Martl is insufficient to
support an award of punitive damages, Plaintiffs'
request for punitive damages should be denied.

    5.  <u>Attorneys' Fees</u>

      The Court finds that Plaintiffs are not
entitled to attorneys' fees.  Plaintiffs characterize
their fraudulent transfer claims under HRS Chapter 651C
as quasi-contract claims, which are in the nature of
assumpsit and thus compensable under HRS § 607-14.
Martl opposes the request for fees because it is
inconsistent with Plaintiffs' request for punitive
damages.

      A federal court sitting in diversity must apply
state law in determining whether the prevailing party
is entitled to attorneys' fees.  <u>See</u> <u>Farmers Ins. Exch.</u>
<u>v. Law Offices of Conrado Joe Sayas, Jr.</u>, 250 F.3d
1234, 1236 (9th Cir. 2001).  Under Hawaii law,
"[o]rdinarily, attorneys' fees cannot be awarded as

27

damages or costs unless so provided by statute, stipulation, or agreement." <u>Stanford Carr Dev. Corp. v. Unity House, Inc.</u>, 111 Hawai'i 286, 305, 141 P.3d 459, 478 (2006) (citation and quotation marks omitted).

In this case, Plaintiffs' statutory cause of action, i.e., HRS Chapter 651C, does not authorize an award of fees. <u>TSA Intern. Ltd. v. Shimizu Corp.</u>, 92 Hawai'i 243, 264, 990 P.2d 713, 734 n.9 (1999). Nevertheless, Plaintiffs posit that their fraudulent transfer claim is quasi-contractual and compensable under HRS § 607-14.  Section 607-14 states, in pertinent part:

> In all the courts, in all actions in the
> nature of assumpsit and in all actions on
> a promissory note or other contract in
> writing that provides for an attorney's
> fee, there shall be taxed as attorneys'
> fees, to be paid by the losing party and
> to be included in the sum for which
> execution may issue, a fee that the court
> determines to be reasonable; provided that
> the attorney representing the prevailing
> party shall submit to the court an
> affidavit stating the amount of time the
> attorney spent on the action and the
> amount of time the attorney is likely to
> spend to obtain a final written judgment,
> or, if the fee is not based on an hourly

> rate, the amount of the agreed upon fee.
> The court shall then tax attorneys' fees,
> which the court determines to be
> reasonable, to be paid by the losing
> party; provided that this amount shall not
> exceed twenty-five per cent of the
> judgment.

Haw. Rev. Stat. § 607-14.  A court awarding attorneys'
fees pursuant to § 607-14 must apportion the fees
claimed between assumpsit and non-assumpsit claims, if
practicable.  See Blair v. Ing, 96 Hawai'i 327, 332, 31
P.3d 184, 189 (2001).

"Assumpsit is a common law form of action which
allows for the recovery of damages for non-performance
of a contract, either express or implied, written or
verbal, as well as quasi contractual obligations." 808
Dev., LLC v. Murakami, 111 Hawai'i 349, 366, 141 P.3d
996, 1013 (2006) (citation, emphases, and quotation
marks omitted).  "'[T]he nature of a claim' is
'determined from the substance of the entire pleading,
the nature of the grievance, and the relief sought,
rather than from the formal language employed or the
form of the pleadings.'"  S. Utsunomiya Enters, Inc. v.

29

<u>Moomuku Country Club</u>, 76 Hawai'i 396, 400, 879 P.2d 501, 505 (1994).  For a claim to be in the nature of assumpsit, "the plaintiff's primary objective must be to obtain monetary relief for breach of the contract." <u>Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel</u>, 151 P.3d 732, 761 (Haw. 2007).

Here, the Court finds that the HRS Chapter 651C claims are not in the nature of assumpsit.  Plaintiffs rely on <u>United States v. Neidorf</u>, 522 F.2d 916, 918 (9th Cir. 1975), to support their request for fees. <u>Neidorf</u> involved the fraudulent transfer of shares to shareholders which rendered the corporation insolvent. The Ninth Circuit held that the "liability of a transferee of a fraudulent conveyance and the liability of a shareholder to a creditor of the corporation are based not upon tort but upon quasi-contract."  <u>Id.</u> While the Court recognizes that this case lends some support to Plaintiffs' argument, the Court is not persuaded that Plaintiffs are entitled to attorneys' fees.

Ordinarily, Ninth Circuit cases are binding authority.  However, where, as here, the Court's jurisdiction is based on diversity, the Court must look to state law.  As noted earlier, HRS Chapter 651C does not provide for fees.  Given that HRS § 651C-7 entitles creditors prevailing on fraudulent transfer claims to a number of equitable remedies, but does not provide for attorneys' fees, the Court finds that attorneys' fees were not intended to be a remedy for fraudulent transfer claims.  Thus, while the Court acknowledges that the Ninth Circuit has found fraudulent transfer claims to be quasi-contractual, a determination here that claims under HUFTA are in the nature of assumpsit would contravene the plain language of HUFTA, particularly HRS § 651C-7.[6]

6. <u>Costs</u>

_____

[6] Even assuming, *arguendo*, that the Court concluded that Plaintiffs' HUFTA claims were in the nature of assumpsit, the Court would nonetheless recommend a denial of the request for fees without prejudice. Plaintiffs' submissions in support of their request for fees fail to comply with Local Rule 54.3(d).

31

The Court recommends that the district court deny without prejudice Plaintiffs' request for costs. FRCP 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1).  The Local Rules provide that "[t]he party entitled to costs shall be the prevailing party in whose favor judgment is entered, or shall be the party who prevails in connection with a motion listed in LR54.2(b)."  Local Rule 54.2(a).

Courts have discretion to award costs pursuant to Rule 54(d).  See Yasui v. Maui Electric Co., Ltd., 78 F. Supp. 2d 1124, 1126 (D. Haw. 1999).  The burden is on the losing party to demonstrate why costs should not be awarded. Stanley v. Univ. of Southern California, 178 F.3d 1069, 1079 (9th Cir. 1999).

While courts have discretion to award costs pursuant to Rule 54(d), courts may only tax the costs specified in 28 U.S.C. § 1920.  See Yasui, 78 F. Supp. 2d at 1126 (citing Alflex Corp. v. Underwriters

32

Laboratories, Inc., 914 F.2d 175, 177 (9th Cir. 1990);

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S.

437, 441-42 (1987)).  Section 1920 enumerates the

following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all
> or any part of the stenographic
> transcript necessarily obtained for
> use in the case;
> (3) Fees and disbursements for
> printing and witnesses;
> (4) Fees for exemplification and
> copies of papers necessarily obtained
> for use in the case;
> (5) Docket fees under section 1923 of
> the title;
> (6) Compensation of court appointed
> experts, compensation of interpreters,
> and salaries, fees, expenses, and
> costs of special interpretation
> services under section 1828 of this
> title.

28 U.S.C. § 1920; Yasui, 78 F. Supp. 2d at 1126.

Here, Plaintiffs' submissions are not in

conformance with Local Rules 54.3(d)3 and 54.2.

Consequently, the Court is unable to ascertain the

reasonableness of the costs and/or Plaintiffs'

entitlement to costs.  If Plaintiffs wish to renew

their request for costs, they should submit a

declaration in accordance with the applicable rules by no later than May 8, 2008.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court FINDS AND RECOMMENDS that Plaintiffs' Motion for Default Judgment, filed March 5, 2008, be GRANTED IN PART AND DENIED IN PART.  Specifically, the Court recommends that default judgment be entered against Martl, along with the following remedies:  1) avoidance of the transfer of the subject property; 2) attachment of the subject property as security for the Massachusetts judgment; 3) appointment of a receiver to take possession of the subject property and the personal property therein; and 4) injunction preventing further disposition of the subject property.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, April 17, 2008.

_____
Kevin S.C. Chang
United States Magistrate Judge

CV 06-00144 JMS-KSC; <u>VALVANIS, et al. v. MILGROOM, et al.</u>, FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT