IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARY VALVANIS, JOHN VALVANIS AND GEORGE VALVANIS, | ) ) ) | CIVIL NO. 06-00144 JMS-KSC |
| | ) | ORDER: (1) DENYING |
| | ) | PLAINTIFFS' MOTION FOR |
| Plaintiffs, | ) | PARTIAL SUMMARY JUDGMENT |
| | ) | ON COUNT I (RICO CLAIM); (2) |
| vs. | ) | DENYING PLAINTIFFS' MOTION |
| | ) | FOR PARTIAL SUMMARY |
| ROBERT B. MILGROOM, NADA | ) | JUDGMENT ON COUNT IV |
| MARTL aka NADA R. MILGROOM, | ) | (FRAUDULENT TRANSFER WITH |
| and CHRISTIAN MAERTL, | ) | INTENT); AND (3) DENYING |
| | ) | PLAINTIFFS' MOTION FOR |
| Defendants. | ) | PARTIAL SUMMARY JUDGMENT |
| | ) | ON COUNT IV (FRAUDULENT |
| | ) | TRANSFER FOR LESS THAN |
| | ) | REASONABLY EQUIVALENT |
| _____ | ) | VALUE) |

## ORDER: (1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I (RICO CLAIM); (2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT IV (FRAUDULENT TRANSFER WITH INTENT); AND (3) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT IV (FRAUDULENT TRANSFER FOR LESS THAN REASONABLY EQUIVALENT VALUE)

## I.  INTRODUCTION

Plaintiffs Mary, John, and George Valvanis ("Plaintiffs" or "Valvanis

Family") allege that Defendants Robert B. Milgroom ("Milgroom") and Nada

Martl ("Martl") (collectively, "Defendants"), engaged in a scheme to hide and

shield assets from Milgroom's creditors, including Plaintiffs.  Defendants married

in 2001, and in 2002 purchased real property located in Honolulu, Hawaii (the "Hawaii Property") to be held as tenants by the entirety.  In 2003, Milgroom transferred his interest in the Hawaii Property, as well as substantial sums of money, to Martl.  Defendants divorced in 2005, and Milgroom declared bankruptcy shortly thereafter.  Plaintiffs allege, among other things, that the Hawaii Property transfer to Martl was fraudulent, and seek damages and equitable relief, including avoidance of the Hawaii Property transfer to Martl.

Currently before the court are the following motions: (1) Plaintiffs' Motion for Partial Summary Judgment on Count I (RICO Claim) ("Pls.' RICO Mot."); (2) Plaintiffs' Motion for Partial Summary Judgment on Count IV (Fraudulent Transfer with Intent) ("Pls.' § 651C-4(a)(1) Mot."); and (3) Plaintiffs' Motion for Partial Summary Judgment on Count IV (Fraudulent Transfer for less than Reasonably Equivalent Value) ("Pls.' § 651C-4(a)(2) Mot.").  For the following reasons, the court DENIES each of Plaintiffs' Motions for Summary Judgment.

///

///

///

///

## II. BACKGROUND

### A. Factual Background

### 1. Monetary Claims Against Milgroom

Plaintiffs allege that they became Milgroom's creditors from business dealings that occurred in the 1980s, and which are the basis of litigation spanning from 1987 through the present.  In April 1987, Plaintiffs filed a lawsuit against Milgroom in Massachusetts (the "Massachusetts Action") alleging that he "committed breaches of fiduciary duty, fraud and deceit, intentional infliction of emotional distress, and breach of contract" through actions he took as their attorney, accountant, and advisor for Plaintiffs' business.  Pls.' Ex. 5 at 1.

In 1994, a Special Master in the Massachusetts Action issued a report finding that Plaintiffs owed Milgroom $150,000 ("Special Master's Report").  *See* Milgroom Decl., Doc. No. 359 (attaching portions of Special Master's Report).[1]

---

[1] Milgroom filed three separate "Declarations" in opposition to Plaintiffs' Motions for Summary Judgment, including: (1) a "Declaration to Oppose Plaintiffs' Motion for Partial Summary Judgment Against Defendant Robert B. Milgroom on Count I of the Second Amended Complaint (RICO)," Doc. No. 359; (2) a "Declaration to Oppose Plaintiffs' Motion for Partial Summary Judgment Against Defendant Robert B. Milgroom on Count IV of the Second Amended Complaint (RICO)," Doc. No. 378; and (3) a "Declaration to Oppose All Plaintiffs' Motions, Past, Present or Future, For Partial or Total Summary Judgment and/or for Any Default Judgment Against Defendant Robert B. Milgroom, and/or Defendant Nada Martl, and/or Defendant Christian Maertl."  Doc. No. 379.  These Declarations are largely repetitive of one another, and the court therefore cites to these "Declarations" by Docket Number.

The court also recognizes that these "Declarations" fail to comply with the Local Rules governing summary judgment.  Local Rule 56.1(b) requires that an opposition to a motion for

(continued...)

After the Special Master's Report, both parties participated in the Massachusetts Action. For example, the parties filed motions for extensions to file objections, Pls.' Ex. 3, Milgroom's attorney filed a motion to withdraw, *id.*, and Milgroom appeared pro se. Pls.' Ex. 2, ¶ 12. The Massachusetts Action then stalled for several years. However, on September 7, 2005, the court set aside the Special Master's Report, and on October 18, 2005, entered a judgment against Milgroom after he failed to participate. Pls.' Exs. 4-5. On July 3, 2007, the court issued a Memorandum of Decision on Damages Trial and Order for Judgment, ordering judgment and damages in favor of Plaintiffs totaling almost $4 million. Pls.' Ex. 5; Pls.' Ex. 6 (calculating interest on judgment).

In addition to the Massachusetts Action, in 2002, Milgroom's first wife's family, the D'Ambrosio family, filed a separate action against Milgroom in Massachusetts (the "D'Ambrosio Action"). The D'Ambrosio family alleged that Milgroom fraudulently transferred for his benefit his wife's monies that were to

---

[1](...continued)
summary judgment be accompanied by a separate concise statement that either accepts the facts set forth in the moving party's concise statement, or sets forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated. While Milgroom is appearing pro se, he is also a disbarred attorney, Pls.' Ex. 21, and should know the proper court procedures especially in light of the fact that the court previously warned him to follow the Local Rules. *See* Nov. 13, 2008 Order at 8 n.3. Milgroom is cautioned that he must follow the Local Rules in the future and any further failure to do so may result in sanctions.

used for the benefit of the D'Ambrosio family.  On May 14, 2007, the court in the D'Ambrosio action found against Milgroom.  *See* Pls.' Ex. 22.

### 2.   *Milgroom and Martl*

Milgroom married Martl on September 11, 2001, six months after his first wife passed away.  Pls.' Ex. 7 (listing wedding date).  Prior to their marriage, Defendants were involved together in two Florida real estate investment companies.  Pls.' Ex. 10 (listing Milgroom's income from "Elegant Homes of Florida" in 1999 and "Martl Int'l" in 2000).[2]  Martl agreed to marry Milgroom and give up her real estate business in exchange for half of Milgroom's net worth, which was estimated to be at least $10 million.  Pls.' Ex. 12 at 111-12; Pls.' Ex. 30, Martl Decl. ¶ 12.  In lieu of giving Martl $5 million, Milgroom claims that he added her name to all of his financial accounts.  Pls.' Ex. 12 at 136.  Martl admitted that some of Milgroom's funds may have been deposited into a German bank account in her name.  Pls.' Ex. 30, Martl Decl. ¶ 13; *see also* Pls.' Ex. 12 at 113.

///

///

---

[2]  At some point in time, Milgroom acquired Elegant Homes of Florida.  *See* Pls.' Ex. 12 at 317-19.

### 3.    *The Hawaii Property*

On August 2, 2002, Milgroom and Martl purchased the Hawaii

Property, located at 253 Puuikena Drive, Honolulu, Hawaii 96821, for $5.2

million cash.  Murakami Decl. ¶ 22.  Martl alleges that "the funds used to purchase

the Hawaii Property were solely my own, and were wired to Hawaii from a

German bank account solely under my name and control."  Pls.' Ex. 30, Martl

Decl. ¶ 4.  In comparison, Plaintiffs allege that the Hawaii Property payment did

not come directly from the German bank account, and these funds are traceable to

Milgroom's $10 million net worth.[3]  On July 10, 2002, $6,499,982 was wire

transferred from a German bank account to First Hawaiian Bank, and deposited

into Defendants' joint checking account.  Murakami Decl. ¶¶ 23-24, and Exs. L &

M attached thereto.  Next, Milgroom drew a check from this account for

$7,125,000 payable to Milgroom, and deposited it into Defendants' joint savings

account.  *Id.*  Milgroom then withdrew $4,915,253.15 to purchase the Hawaii

Property.  *Id.* ¶¶ 24-25, and Ex. N attached thereto.  Regardless of the path that the

funds took, Milgroom asserts that at the time of this purchase, the Special Master's

---

[3]  Plaintiffs further assert that "[t]he funds to purchase the Hawaii Property were Milgroom's."  Pls.' Concise Statement of Facts ("CSF") 16.  While Plaintiffs have traced monies from Milgroom to Martl starting in 2003, the court finds no evidence on the record that shows that the monies in the German bank account used to purchase the Hawaii Property were all from Milgroom.

Report was in effect, and Plaintiffs owed him $150,000.  *See* Milgroom Decl. at 2,

Doc. No. 359.

   On May 13, 2003, Milgroom and Martl transferred their interest in

the Hawaii Property held as tenants by the entirety to Martl for $10.  Pls.' Ex. 24.

### 4. *Other Money Transfers from Milgroom to Martl*

   Beyond the transfers discussed above, it appears that during their

marriage Milgroom and/or Martl transferred additional amounts of money to

Martl.  Plaintiff's expert, Ross Murakami, analyzed Milgroom and Martl's bank

records available to Plaintiff,[4] and asserts that Milgroom and Martl jointly owned

several Treasury Direct Accounts totaling $6.3 million.  From January 23, 2003

through May 12, 2003,[5] the funds in these Treasury Direct Accounts were

transferred first to a First Hawaiian Bank account held jointly by Defendants, and

then to a First Hawaiian Bank checking account by Martl.  *See* Murakami Decl.

¶¶ 14-17 (citing exhibits).  Martl then transferred a total of $6 million to an

account in her name with CommerzBank in Germany.  *Id.* ¶ 19 (citing exhibits).

---

[4] Murakami recognized that he is not in possession of all of Milgroom's financial information.  *See* Murakami Decl. ¶ 11.  However, Milgroom has not challenged any of Plaintiffs' facts regarding his finances.

[5] As a point of reference, Milgroom transferred his interest in the Hawaii Property to Martl on May 13, 2003.  On May 12, 2003, a total of $3 million was transferred to Martl's First Hawaiian Bank account.

On December 5, 2003, Martl transferred $4.3 million from her CommerzBank account back to her First Hawaiian Bank account, and then to UBS AG, a Swiss bank corporation.  *Id.* ¶ 21 (citing exhibits).

### 5.    *Milgroom and Martl's Divorce*

On June 14, 2005, Martl filed for divorce against Milgroom, which was granted only two weeks later, on June 28, 2005.  Pls.' Ex. 7.  In the divorce papers, signed under penalty of perjury, neither Milgroom nor Martl listed any income, expenses, cash, credit union accounts, bank and savings accounts, securities, or any other major assets, other than a 2005 BMW vehicle and the Hawaii Property.  *Id.*  Milgroom also signed a release of marital interest in the Hawaii Property.  *Id.*  Milgroom nonetheless continued to live in the Hawaii Property and assist in its sale.  *See* Pls.' Ex. 27 (indicating that Milgroom was present for showings, created a disclosure statement of repairs, and leased art for the Hawaii Property).

The court in the D'Ambrosio Action called this divorce "fraudulent." Specifically, the court stated that Milgroom transferred funds belonging to his former wife's estate and trust "to his new wife as part of a fraudulent divorce in Hawaii specifically to remove those assets from the jurisdiction of the [Massachusetts court]."  Pls.' Ex. 22, ¶ 132.

### 6.   *Milgroom Declares Bankruptcy*

On July 11, 2005, only two weeks after the divorce decree, Milgroom filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Hawaii (the "Bankruptcy Action").  Pls.' Ex. 16, ¶ 1.  In August 2005, Milgroom converted his bankruptcy case to Chapter 13, which the bankruptcy court later stated was in part for Milgroom "to avoid investigation and action by the Chapter 7 trustee."  *Id.* ¶ 7.

Plaintiffs subsequently learned of the Bankruptcy Action and began to participate as creditors.  *Id.* ¶ 12.  On May 12, 2006, the bankruptcy court entered an order (1) finding Milgroom in contempt of court, (2) awarding sanctions, (3) granting Plaintiffs relief from the automatic stay nunc pro tunc, and (4) denying the request for a bench warrant.  *Id.*  The bankruptcy court noted that Plaintiffs had "submitted substantial evidence concerning questionable transfers of [Milgroom's] interest in real property in Florida and in Hawaii to Martl during a four-year period prior to [Milgroom's] bankruptcy petition, including without limitation, the transfer of [Milgroom's] interest in the [Hawaii Property] in 2003 for no consideration."  *Id.* ¶ 23.  The bankruptcy court further found that Plaintiffs had "produced compelling evidence that [Milgroom] has engaged in fraudulent real estate and financial transaction with his wife, and then, ex-wife, Martl,

between 2002 and the present."[6]  *Id.* ¶ 33.

On June 7, 2006, the bankruptcy court dismissed Milgroom's case with prejudice, "meaning that no debts which could have been discharged . . . shall be dischargeable in any other bankruptcy case in which [Milgroom] shall be a debtor."  Pls.' Ex. 18.

### 7.    *Milgroom and Martl's On-going Relationship After the Divorce*

Despite their divorce, Milgroom and Martl have stayed in contact with one another, and Milgroom is currently living in Florida with Martl's son, Christian Maertl ("Maertl").[7]  In the D'Ambrosio Action, Milgroom and Maertl both testified that Martl was providing for all their needs, including $200,000 in legal fees for Milgroom.  Pls.' Ex. 22, ¶ 130.  Further, the bankruptcy court noted that it "appears that here is an on-going relationship between [Milgroom] and Martl."  Pls.' Ex. 16, ¶ 33.

### B.    Procedural Background

Plaintiffs filed a Complaint against Martl on March 10, 2006, and a First Amended Complaint ("FAC") against Martl and Milgroom on May 23, 2006.

---

[6]  In addition to these statements, the court in the Massachusetts Action later described Milgroom's bankruptcy petition as "fraudulent."  Pls.' Ex. 5.

[7]  Despite the mother-son relationship between Martl and Maertl, their surnames are apparently spelled differently and due to this difference, the court refers them by their last names.

The FAC alleged claims for (1) Fraudulent Conveyance Under Hawaii Revised Statutes ("HRS") ch. 651C, Hawaii Uniform Fraudulent Transfer Act ("HUFTA"); (2) Civil Conspiracy to Defraud; (3) Common Law Fraudulent Transfer; (4) Constructive and/or Resulting Trust and/or Equitable Lien; (5) Injunction Against Further Disposition of the Hawaii Property; and (6) Appointment of Receiver.[8]

Milgroom and Martl separately filed Motions to Dismiss and/or for Summary Judgment on the FAC, which the court denied on November 13, 2007 ("November 13, 2007 Order").  On December 14, 2007, the Clerk of Court entered default against Martl after she failed to file a response to the FAC.[9]

On January 30, 2008, Plaintiffs filed a Second Amended Complaint ("SAC") naming Maertl as a defendant,[10] and asserting the following claims against Milgroom and Maertl: (1) violation of federal civil RICO Act (Count I); (2) conspiracy to violate federal civil RICO Act (Count II); (3) violation of Hawaii state civil RICO Act (Count III); (4) fraudulent transfer of Florida property to

---

[8]  The FAC also included claims for spoliation of evidence and enforcement of contempt order and judgment, which the court dismissed in its November 13, 2007 Order.

[9]  Plaintiffs subsequently moved for entry of default judgment against Martl, which this court denied as premature due to the possibility of incongruous judgments between Martl and Milgroom.

[10]  On April 10, 2008, the court granted Maertl's Motion to Dismiss for lack of personal jurisdiction.

Maertl (Count V); (5) civil conspiracy to defraud (Count VI); and (6) constructive

and/or resulting trust and/or equitable lien (Count VIII).  The SAC also re-alleges

the claims from the FAC, including: (1) violation of HUFTA (Count IV);

(2) common law fraudulent transfer (Count VII); (3) injunction against further

disposition of the Hawaii and Florida properties (Count IX); and (4) appointment

of receiver (Count X).

On March 5, 2008, Plaintiffs filed two separate Motions for Summary

Judgment on their HUFTA claim on the grounds that: (1) Milgroom transferred

the Hawaii Property to Martl with intent to hinder, delay, or defraud his creditors

in violation of HRS § 651C-4(a)(1), and (2) Milgroom transferred the Hawaii

Property to Martl for less than reasonably equivalent value in violation of HRS

§ 651C-4(a)(2).  On March 6, 2008, Plaintiffs filed a third Motion for Summary

Judgment, this time on Plaintiffs' federal RICO claim.  Between March 14, 2008,

and March 20, 2008, Milgroom filed three "Declarations" in opposition to

Plaintiffs' Motion for Summary Judgment.[11]  On April 23, 2008, Plaintiffs filed a

---

[11]  In addition to Milgroom's "Declarations," Christian Maertl filed a Declaration to Oppose Plaintiffs' Motion for Partial Summary Judgment on March 17, 2008.  This Declaration is largely repetitive of Milgroom's Declaration, and Maertl is no longer a party in this action. Accordingly, the court does not rely on the Maertl Declaration in determining summary judgment.  Further, on May 12, 2008, Milgroom filed a "Reply" to Plaintiffs' Reply on the Motion for Summary Judgment on the RICO Claim.  Doc. No. 457.  During a May 12, 2008 Hearing, the court struck this filing as improper.

Reply in support of their Motion for Summary Judgment on Plaintiffs' RICO claim, and on April 24, 2008, a single Reply in support of their two Motions for Summary Judgment on their HUFTA Claim ("Pls.' HUFTA Reply").[12]

## III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law

---

[12]  Pursuant to Local Rule 7.2(d), the court finds Plaintiffs' Motions for Summary Judgment suitable for disposition without a hearing.

governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d

912, 919 (9th Cir. 2001).  When considering the evidence on a motion for

summary judgment, the court must draw all reasonable inferences on behalf of the

nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587

(1986).

## IV.  <u>DISCUSSION</u>

### A.     **Evidentiary Issues**

Before addressing the substance of Plaintiffs' Motions for Summary

Judgment, the court first addresses the scope of the evidence at issue.  Specifically,

several of the "facts" asserted by Plaintiffs are not supported by admissible

evidence, are not supported by evidence submitted with their Motions, or lack a

proper foundation.  In making its summary judgment determinations, the court

takes into account only those facts properly established by the evidence presented

by the parties.

First, Plaintiffs assert that the November 13, 2007 Order made

"numerous findings of fact which are adverse to Defendant Milgrom," and

therefore cite to the November 13, 2007 Order as establishing these facts.  *See*

Pls.' § 651C-4(a)(2) Mot. at 3 n.1.  Plaintiffs' reliance on the November 13, 2007

Order is misplaced.  The November 13, 2007 Order addressed Defendants'

Motions for Summary judgment, and therefore based its facts by reading the evidence in a light most favorable to the non-movants, *i.e*., Plaintiffs.  Here, the court must read the facts in a light most favorable to Milgroom.  Accordingly, the November 13, 2007 Order's factual findings are irrelevant to Plaintiffs' Motions for Summary Judgment.

Second, Plaintiffs cite to allegations in the FAC as established facts because default was entered against Martl.  *See* Pls.' § 651C-4(a)(2) Mot. at 11. The court is aware that the general rule on default is that the "well-pled allegations in the complaint regarding liability are deemed true" against the defaulting party. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2007).  That does not mean, however, that Martl's admissions apply as a matter of law to Milgroom.  As explained in the court's Order Rejecting Magistrate Judge Chang's April 17, 2008 Findings and Recommendations to Enter Default Judgment Against Defendant Nada Martl, Martl's failure to participate in this action should not put Milgroom in any worse position in defending himself.  Rather, Plaintiffs must prove their claims against Milgroom, and he must be given a fair opportunity to defend against Plaintiffs' claims.

Third, Plaintiffs attempt to "incorporate by reference" several of the filings that they did not submit in support of their Motions for Summary

Judgment, including the Supplemental Expert Report of Ross Murakami

("Murakami Report"), *see generally* Pls.' CSF, and Plaintiffs' filings in support of

default judgment against Martl.  *See* Pls.' HUFTA Reply at 5.  Plaintiffs

apparently believe that Federal Rule of Civil Procedure 10(c) allows them to

incorporate these filings into their Motions for Summary Judgment.  *Id.* (stating

that Plaintiffs incorporate their default judgment filings by reference pursuant to

Rule 10(c)).  Rule 10(c) provides that "[a] statement in a pleading may be adopted

by reference elsewhere in the same pleading or in any other pleading or motion.  A

copy of a written instrument that is an exhibit to a pleading is a part of the

pleading for all purposes."  According to its plain meaning, Rule 10(c) does not

apply to filings outside of pleadings, *e.g.*, documents other than the complaint,

answer, and answer to a counterclaim designated as a counterclaim.  *See* Fed. R.

Civ. P. 7(a) (defining "pleadings" as opposed to "motions"); *Swanson v. U.S.

Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) (holding under Rules 7(b)(2) and

10(c) that "the incorporation of substantive material by reference is not sanctioned

by the federal rules at issue, and the district court did not abuse its discretion in

striking the incorporations"); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th

Cir. 2002) (stating that Rule 10(c) applies to "pleadings" and not "motions").

Accordingly, Rule 10(c) does not allow Plaintiffs to "refer back" to those

documents that they wish the court to consider.

Indeed, Local Rule 56.1(c) specifically requires the filing party to submit all exhibits in support of a motion for summary judgment, and the Ninth Circuit recognizes that the district court need not "comb the record" for documents outside of the summary judgment record.[13]  *See Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (refusing to consider expert affidavit that was not submitted on summary judgment, but was provided to district court for another issue).  The court therefore limits its inquiry to evidence the parties submitted on summary judgment, and does not rely on Plaintiffs' default judgment filings, the Murakami Report, or Murakami's Declaration to the extent it relates back to and/or relies on the Murakami Report to establish facts.[14]

Finally, Plaintiffs argue that previous actions involving Milgroom

---

[13]  Stated more colorfully, when deciding summary judgment judges are not "like pigs, hunting for truffles [in the record]."  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (applying this rule to appellate briefs).

[14]  Further, even if the court did consider Plaintiffs' default judgment filings and the Murakami Report, it is unclear whether and how these documents would help Plaintiffs on summary judgment.  Plaintiffs assert that they included new evidence in their Motion for Entry of Default Judgment, which they discovered after filing their Motions for Summary Judgment.  *See* Pls.' HUFTA Reply at 4.  Plaintiffs never specify, however, what that evidence is and how it shows summary judgment should be granted.  The Murakami Report also appears to have some problems because it relies on the November 13, 2007 Order and FAC as establishing facts.  Even if Plaintiffs properly submitted the Murakami Report in support of their Summary Judgment Motions, the court is not required to sift through it to determine what assertions are actually supported by evidence.

establish certain facts as matter of law, including, for example, that Milgroom

fraudulently divorced Martl and fraudulently filed for bankruptcy. *See* Pls.' RICO

Mot. at 13. Plaintiffs have provided no analysis whatsoever to show that the

previous actions involving Milgroom -- *i.e.*, the Bankruptcy Action, Massachusetts

Action, and D'Ambrosio Action -- litigated these issues such that the court must

accept those findings as established facts against Milgroom. Generally, issue

preclusion (collateral estoppel) applies where the following four requirements are

met:

> "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) (*quoting U.S.*

*Internal Revenue Serv. v. Palmer (In re Palmer)*, 207 F.3d 566, 568 (9th Cir.

2000)).[15] "The burden is on the party seeking to rely upon issue preclusion to

prove each of the elements have been met." *Id.* at 1050-51; *Chew v. Gates*, 27

---

[15] The court recites these elements as merely one formulation for determining whether issue preclusion applies. The exact requirements for issue preclusion must be determined by applying the law of the jurisdiction from which the decision was rendered. *See Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006) (stating that the relevant test in federal court is whether the state court decision "meets the state's own criteria necessary to require a court of that state to give preclusive effect" to the decision (internal quotation marks omitted)).

F.3d 1432, 1438 (9th Cir. 1994).  Because Plaintiffs have failed to address issue preclusion in anything more than a cursory fashion, Plaintiffs have not carried their burden for collateral estoppel to apply, and the court does not rely on any of these decisions as establishing facts against Milgroom.

**B.     Plaintiffs' Summary Judgment Motions**

Plaintiffs argue that they are entitled to summary judgment on both their RICO and HUFTA claims.  Based on the following, the court finds Plaintiffs' arguments unpersuasive.

**1.     *RICO Claim***

Plaintiffs seek summary judgment on their RICO claim, which alleges violation of 18 U.S.C. § 1962(c).  Section 1962(c) provides the following:

> It shall be unlawful for any person employed by or associated
> with any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate,
> directly or indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity or collection of
> unlawful debt.

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Odom v. Microsoft Corp*., 486 F.3d 541, 547 (9th Cir. 2007 ) (en banc) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  A "pattern of racketeering

activity" involves engaging in "at least two" predicate acts of racketeering activity. 18 U.S.C. § 1961(5).  Section 1961(1) outlines an extensive list of what "racketeering activity" may include, and "rang[es] from criminal copyright activities, the facilitation of gambling, and mail fraud to arson, kidnapping and murder." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 479 (2006) (*citing* 18 U.S.C. § 1961(1)).

Plaintiffs assert that Milgroom's racketeering activity includes (1) bankruptcy fraud by filing a fraudulent bankruptcy petition, fraudulent bankruptcy schedules, and a fraudulent account, (2) fraud on a financial institution by misappropriating money his late wife had left for her family members, and (3) money laundering.  *See* Pls.' RICO Mot. at 13.  To support these racketeering activities, Plaintiffs point to various acts of Milgroom, such as filing a bankruptcy petition that was ultimately dismissed, and transferring large amounts of his wealth to Martl.  Plaintiffs fail, however, to explain *how* those acts qualify as predicate racketeering acts under RICO.  Plaintiffs must do more than summarily assert that Milgroom committed bankruptcy fraud, fraud on a financial institution, and money laundering.  Rather, Plaintiffs, as the moving party on summary judgment, must show that there is no genuine issue of material fact with respect to each element of their RICO claim, including the elements making up the predicate

20

acts.[16]  *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  By failing to address the elements of the predicate acts -- much less explain how the evidence establishes each element as a matter of law -- Plaintiffs have failed to carry their burden on summary judgment.[17]

Because Plaintiffs have failed to establish as a matter of law any "racketeering activity," the court DENIES Plaintiffs' Motion for Summary Judgment on their RICO claim.[18]

### 2.   *Count IV: HUFTA*

Plaintiffs seek summary judgment on their HUFTA claim pursuant to both HRS §§ 651C-4(a)(1) and 651C-4(a)(2).  These HRS sections provide the

---

[16]  For example, the money laundering statute, 18 U.S.C. § 1956, outlines several different types of violations, yet Plaintiffs have not even identified which one they are proceeding under for purposes of summary judgment, much less how the evidence they have presented establishes a violation of § 1956 as a matter of law.  Instead, Plaintiffs argue that Milgroom laundered money because he transferred most of his wealth to Martl, and further assert that Murakami concluded that these transfers "were motivated by the desire to launder the money rather than for any legitimate purpose."  *See* Pls.' RICO Mot. at 7.  Plaintiffs' arguments are conclusory and unsupported by evidence.  Murakami makes no such finding of money laundering, and even if he did, the court could not rely on it.  *See Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) ("[A]n expert witness cannot give an opinion as to her *legal conclusion, i.e.*, an opinion on an ultimate issue of law.").  The Murakami Declaration only details Milgroom's transfer of money to Martl, which on its face, is woefully insufficient to prove money laundering.  *See generally* Murakami Decl.; 18 U.S.C. § 1956.

[17]  Further, to the extent Plaintiffs argue that previous actions involving Milgroom establish these predicate acts, as discussed above, Plaintiffs have not carried their burden of showing that issue preclusion applies.

[18]  Because the court finds that Plaintiffs have not established "racketeering activity" as a matter of law, the court does not address the other elements of this claim.

following:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

HRS § 651C-4(a).[19]

---

[19] Section 651C-5 also describes fraudulent transfers as to present creditors:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.
> (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for other than a present, reasonably equivalent value, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

(continued...)

Courts have interpreted HUFTA to provide two possible theories of recovery: "1) actual intent to defraud; and 2) reasonably equivalent value." *In re Agric. Research & Tech. Group, Inc. v. Hayes*, 916 F.2d 528, 534 (9th Cir. 1990). The first theory requires a showing of actual intent, but no showing that the debtor was insolvent at the time of the transaction. *Id.* Under the second theory, "any transfer whereby the transferee gives less than 'reasonably equivalent value' in exchange for the transfer from the debtor [] and has the effect of reducing the [debtor's] assets by a certain sum may also be avoided." *Id.*

Whether pursuant to § 651C-4(a)(1) or § 651C-4(a)(2), the thrust of Plaintiffs' HUFTA claim is that Milgroom fraudulently transferred the Hawaii Property to Martl.[20] But because Defendants initially held the Hawaii Property as tenants by the entirety, the court first addresses whether the Hawaii Property can be subject to the claims of Milgroom's creditors.

HUFTA defines the "transfer" of a fraudulent transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of

---

[19](...continued)

In its November 13, 2007 Order, the court found that Plaintiffs stated a claim pursuant to §§ 651C-4 and 651C-5. However, Plaintiffs have moved for summary judgment pursuant to § 651C-4 only.

[20] Because the following analysis applies under either HRS § 651C-4(a)(1) or § 651C-4(a)(2), the court does not separately address Plaintiffs' two theories of recovery.

disposing of or parting with an *asset* or an interest in an *asset* . . . ."  HRS

§ 651C-1 (emphasis added).  An "'asset' means property of a debtor but does not

include . . . an interest in property held in tenancy by the entireties to the extent

that it is not subject to process by a creditor holding a claim against only one

tenant."  *Id.*  From the plain language of these definitions, it appears that property

held in a tenancy by the entirety is not an "asset" of a debtor, unless the property is

otherwise "subject to process by a creditor holding a claim against only one

tenant."

  Hawaii caselaw confirms this conclusion.  In a tenancy by the

entirety, "neither husband nor wife has a separate divisible interest in the property

held by the entirety that can be conveyed or reached by execution."  *Sawada v.

Endo*, 57 Haw. 608, 614, 561 P.2d 1291, 1295 (1977).  Therefore, "an estate by

the entireties is not subject to the claims of his or her individual creditors during

the joint lives of the spouses."  *Id.* at 612, 561 P.2d at 1295.  This rule creates no

unfairness to creditors:  "If the debt arose prior to the creation of the estate, the

property was not a basis of credit, and if the debt arose subsequently the creditor

presumably had notice of the characteristics of the estate which limited his right to

reach the property."  *Id.* at 616, 561 P.2d at 1296 (citations omitted).

  Because a creditor of a debtor-spouse cannot attach its claim to

property held in a tenancy by the entirety, it follows that a creditor cannot seek to

avoid a transfer from a tenancy by the entirety to a third party or non-debtor

spouse.  *See id.* (finding that creditor of husband could not seek to avoid property

transfer from husband and wife to their children); *see also Am. Wholesale Corp. v.

Aronstein*, 10 F.2d 991, 993 (D.C. Cir. 1926) (finding that creditors of husband

seeking to set aside conveyances of property to his wife had no relief "since in

effect they are seeking to enforce execution for the collection of their judgments

against an estate which from its nature is not subject to such a process"); *Wylie v.

Zimmer*, 98 F. Supp. 298, 300 (E.D. Pa. 1951) (granting motion to dismiss to

extent bankruptcy trustee sought to set aside transfer of property held as tenants by

the entirety to third party, and then back to wife, because trustee could not acquire

debtor husband's interest in it); *Watterson v. Edgerly*, 388 A.2d 934, 938 (Md.

App. 1978) ("A property owned as tenants by the entireties may be conveyed by

either the husband or the wife to the sole ownership of the other even though the

purpose behind the conveyance is to prevent the enforcement of a judgment

against the grantor should he survive the grantee."); *Vasilion v. Vasilion*, 66 S.E.

2d 599, 602 (Va. 1951) (holding that husband and wife could convey land held by

them as tenants by the entireties to wife free of any claim based on a pre-existing

debt of husband subsequently reduced to judgment, and that such conveyance

could not be set aside as fraudulent as to judgment creditor); *Page v. Corn Exchange Nat'l Bank & Trust Co.*, 171 A. 560, 561 (Pa. 1934) (finding that because creditors could not subject property held in an tenancy by the entireties to a lien or prevent its transfer to a third party, creditors were not defrauded by transfer to the wife).

With that said, however, *Sawada* also recognizes that "the creation of the tenancy by the entirety may not be used as a device to defraud existing creditors." *Sawada*, 57 Haw. at 616, 561 P.2d at 1297 (citations omitted); *see also In re Estate of Wall*, 440 F.2d 215, 219 (D.C. Cir. 1971) ("This is not to say, however, that rights and remedies of existing creditors can be obliterated by the simple expedient of erecting a tenancy by the entireties in property that is otherwise vulnerable."). The court therefore finds that for the Hawaii Property to be considered an asset for purposes of HUFTA and therefore "subject to process by a creditor holding a claim against only one tenant," *see* HRS § 651C-1, Plaintiffs must prove that the creation of the tenancy by the entirety was used as a device to defraud existing creditors.

Viewing the evidence in a light most favorable to Milgroom, the court finds that Plaintiffs have not shown as a matter of law that the tenancy by the entirety was created as a device to defraud existing creditors. Defendants were

26

legally married from 2001 until 2005.  It is not uncommon (indeed, it is quite ordinary) that spouses co-mingle their assets, and hold property as tenants by the entirety.  Further, Milgroom asserts that at the time he and Martl purchased the Hawaii Property, the 1994 Special Master's Report finding in his favor was in effect.  *See* Milgroom Decl. at 2, Doc. No. 359.  Accordingly, it is a question of fact whether the tenancy by the entirety was created to defraud existing creditors.[21]

In support of their Motions, Plaintiffs cite to *In re Agricultural Research and Technology Group*, 916 F.2d at 534, for the proposition that the "court may make a finding of fraudulent intent . . . on the basis of circumstantial evidence," and argue that the facts overwhelmingly support a finding of fraud as a matter of law.  Specifically, Plaintiffs argue that summary judgment should be granted because (1) Murakami determined that the funds used to purchase the Hawaii Property originated from Milgroom, (2) Milgroom transferred all of his other assets to Martl, and (3) Milgroom's later acts of transferring his interest to Martl, filing for divorce and possibly destroying documents, shows evidence of fraud.  *See* Pls.' § 651C-4(a)(1) Mot. at 23-25; Pls.' § 651C-4(a)(2) Mot. at 11-13.

---

[21]  The court notes that Milgroom *was* aware of the D'Ambrosio family's claims against him at this time.  However, the D'Ambrosio family had no judgment against him at this time, and the court will not infer on summary judgment that the proactive step was taken of setting up a fraudulent tenancy by the entirety.

The court rejects these arguments.

As an initial matter, evidence that the Hawaii Property was purchased with Milgroom's funds only, without more, would not establish that the tenancy by the entirety was fraudulently created.  Regardless, the court could find no factual support for Plaintiffs' assertion that Milgroom provided most, if not all, of the funds used to purchase the Hawaii Property.  *See* Pls.' § 651C-4(a)(1) Mot. at 23.  Plaintiffs cite to the Murakami Report as supporting this statement, but as discussed above, Plaintiffs did not submit it in support of their Motions, and in any event it appears that Murakami improperly relied on the FAC to establish this fact.[22]  The court cannot and will not rely on Plaintiffs' *allegations* to establish facts.

Plaintiffs also ask the court to infer that the tenancy by the entirety was fraudulently created based on Milgroom's other acts of transferring large sums of money to Martl, not declaring any assets in their divorce petition, and filing for bankruptcy.  To the extent that evidence of these acts is properly before

---

[22]  Murakami apparently also opines that "'the structure of the ownership was another effort made by Martl and Milgroom to hinder, delay and defraud his creditors by shielding the Hawaii Property from claims,'" which Plaintiffs rely on to show that the tenancy by the entirety was fraudulently created.  *See* Pls.' § 651C-4(a)(1) Mot. at 23 (*quoting* Murakami Report).  Even if the court did consider the Murakami Report, Murakami's conclusion on an ultimate issue of law is inadmissible.  *See Mukhtar*, 299 F.3d at 1065 n.10 (9th Cir. 2002) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law.").

the court, they do not convince the court that as a matter of law, the tenancy by the entirety was created to defraud existing creditors.  Viewing the evidence in a light most favorable to Milgroom, a jury -- not this court -- must determine if the tenancy by the entirety was created to defraud existing creditors.  For these reasons, the court DENIES Plaintiffs' Motions for Summary Judgment on their HUFTA claim.[23]

## V.  CONCLUSION

For the reasons discussed above, the court (1) DENIES Plaintiffs' Motion for Summary Judgment on Count I (RICO Claim); (2) DENIES Plaintiffs' Motion for Summary Judgment on Count IV (Fraudulent Transfer with Intent);

///

///

///

///

///

///

---

[23]  Because the court finds that Plaintiffs have not carried their burden to prove as a matter of law that the creation of the tenancy by the entirety was created to defraud existing creditors, the court does not address Plaintiffs' other arguments on summary judgment.  In any event, given the state of the record, *see supra* § IV(A), the court does not find any issues suitable for partial summary judgment.  *See* Fed. R. Civ. P. 56(d)(1) (stating that "the court should, to the extent practicable, determine what material facts are not genuinely at issue").

and (3) DENIES Plaintiffs' Motion for Summary Judgment on Count IV

(Fraudulent Transfer for less than Reasonably Equivalent Value).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 22, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Valvanis et al. v. Milgroom et al.*, Civ. No. 06-00144 JMS/KSC, Order: (1) Denying Plaintiffs' Motion for Partial Summary Judgment on Count I (Rico Claim); (2) Denying Plaintiffs' Motion for Partial Summary Judgment on Count IV (Fraudulent Transfer with Intent); and (3) Denying Plaintiffs' Motion for Partial Summary Judgment on Count IV (Fraudulent Transfer for less than Reasonably Equivalent Value)