IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARY VALVANIS, JOHN VALVANIS AND GEORGE VALVANIS, <br><br> Plaintiffs, <br><br> vs. <br><br> ROBERT B. MILGROOM, and NADA MARTL aka NADA R. MILGROOM, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

CIVIL NO. 06-00144 JMS-KSC

ORDER ENTERING DEFAULT AGAINST DEFENDANT ROBERT B. MILGROOM

## ORDER ENTERING DEFAULT AGAINST DEFENDANT ROBERT B. MILGROOM

## I.  INTRODUCTION

On November 13, 2008, the court entered default against Defendant

Robert Milgroom ("Milgroom") after he failed to attend the Final Pretrial

Conference in apparent disregard of the court's warnings that his failure to attend

"may result in sanctions, up to and including default being entered against him."

Doc. No. 531 at 7; *see also* Doc. No. 507 at 9.  Plaintiffs Mary, John, and George

Valvanis ("Plaintiffs") have since set forth additional reasons why entry of default

should be entered, and Milgroom has filed his own documents explaining why he

did not attend the Final Pretrial Conference and why default should be set aside

and/or not be entered against him.

Given the peculiar procedural history of his case, and to give Milgroom every benefit in the court's determination of entry of default, the court views this issue anew as opposed to determining whether entry of default should be set aside. Based on the following, the court ENTERS DEFAULT against Milgroom.

## II.  **BACKGROUND**[1]

### A.    **Factual Background**

To support entry of default, Plaintiffs point to many of Milgroom's acts not only in this action, but also in other actions relevant to Plaintiffs' claims against Milgroom. By way of background, Plaintiffs allege that Milgroom and Nada Martl ("Martl")[2] engaged in a scheme to hide and shield assets from Milgroom's creditors, including Plaintiffs. Plaintiffs became Milgroom's creditors through a lawsuit filed in Massachusetts (the "Massachusetts Action") in which

---

[1] Because the factual background of this case is set forth in multiple previous orders, the court recites only those facts relevant and/or necessary to place into context the entry of default. *See, e.g.*, *Valvanis v. Milgroom*, 2008 WL 2164652 at *1-4 (D. Haw. May 22, 2008); *Valvanis v. Milgroom*, 529 F. Supp. 2d 1190, 1193-95 (D. Haw. 2007).

[2] On December 14, 2007, the Clerk of Court entered default against Martl after she failed to file a response to Plaintiffs' First Amended Complaint. Doc. No. 234. Plaintiffs subsequently moved for entry of default judgment against Martl, which this court denied as premature due to the possibility of incongruous judgments between Martl and Milgroom. Doc. No. 464.

2

they received judgment in 2005 after Milgroom failed to participate.  Milgroom has another set of creditors, the D'Ambrosio family, who won judgment against Milgroom based on his fraudulent transfer of his first wife's monies to himself while she was terminally ill in the hospital (the "D'Ambrosio Action").  *See* Pls.' Ex. J.[3]  Plaintiffs allege that Milgroom hid his assets from his creditors by marrying Martl shortly after his first wife's death and then transferring all of his money and real property to Martl.  Plaintiffs further allege that Milgroom and Martl divorced in 2005 so that he could fraudulently declare bankruptcy (the "Bankruptcy Action").  The court outlines the evidence the parties have presented regarding default as follows:

### 1.    *Events in this Action*

Throughout this action, Milgroom has failed to comply with numerous court orders and rules, which has prevented Plaintiffs from gathering discovery, expended both the court's and Plaintiffs' resources, and substantially

---

[3]  Plaintiffs submitted Exhibits A-O, Q-S, and pages labeled MD1-MD8 in support of entry of default.  Plaintiffs' Exhibit A is the Declaration of Ted N. Pettit, which attaches Exhibits 1-12.  During a November 25, 2008 hearing, Plaintiffs' Exhibits 1-12 and A, C, D, F-H, J-L, N-O, Q-S, and the last two pages of M were admitted into evidence.  During a December 5, 2008 hearing, MD1-MD8 were admitted into evidence.  For ease of reference, the court cites to Plaintiffs' exhibits by either letter or number as appropriate.

delayed trial.[4]

Regarding discovery, Milgroom refused to give deposition testimony until Plaintiffs received a court order compelling him,[5] and has failed to comply with other orders compelling him to provide basic discovery to Plaintiffs.

Specifically, Milgroom refused to produce any of his financial documents and on November 13, 2007, the court granted Plaintiffs' motion to compel Milgroom to execute authorizations for release of information regarding his accounts with the Department of Treasury, Bureau of the Public Debt ("Department of Treasury").  Doc. No. 205.  The Department of Treasury had produced some documents pursuant to a subpoena, but refused to release additional information without an authorization from Milgroom.  *See* Doc. No. 158 Ex. C.  Milgroom never signed the authorization as ordered by the court,

---

[4] In this Order, the court focuses only on Milgroom's actions that have significantly prejudiced Plaintiffs and/or delayed trial.  The court is aware, however, of Milgroom's myriad other violations of court orders and Local Rules.  Milgroom, a disbarred attorney, affirmed to the court that he would follow the Local Rules, *see* Pls.' Ex. F at 10, but nonetheless filed repetitive motions and documents without permission, *see* Doc. Nos. 412, 461, 509, sent numerous faxes to court chambers despite being instructed on the proper way to file documents, Doc. Nos. 183, 454, 507 at 6 n.3, 509, and even asserted that he represents other Defendants despite his status as a disbarred attorney.  Doc. Nos. 269, 313 ¶ 4 (arguing that Martl requested that he "take a more active role to protect her" in this action), 527 (filing a Motion for Summary Judgment or Change of Venue on behalf of Martl).

[5] On April 21, 2008, Magistrate Judge Chang entered an Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel Defendant Robert B. Milgroom to Attend Oral Deposition.  Doc. No. 430.

forcing Plaintiffs to rely on an authorization signed by the Clerk of Court. Pls.'
Ex. A ¶¶ 8-9; Doc. No. 210.

In addition to refusing to sign an authorization allowing Plaintiffs
access to his financial records, Milgroom produced no documents and submitted
unverified, partial answers to Plaintiffs' discovery requests. Plaintiffs therefore
obtained a March 20, 2008 Order: (1) granting Plaintiffs' motion to compel
Milgroom to produce documents responsive to Plaintiffs' document requests, to
submit full answers to interrogatories, and to certify his answers; and (2) awarding
Plaintiffs their attorneys' fees. Doc. No. 372. Milgroom never paid any portion of
the attorneys' fee award, never produced any documents, and never amended and
certified his interrogatory responses. Pls.' Ex. A ¶ 13. As a result, Plaintiffs had
to subpoena several third party financial institutions and hire accountants to
analyze the financial documents they were able to collect. *Id.* ¶ 14. Even with
these third-party subpoenas, Plaintiffs did not obtain all the documents that they
sought. *Id.*

In addition to Milgroom's failure to comply with discovery orders,
Milgroom has fought trial from proceeding in Hawaii by filing six separate
motions over the past ten months asserting that he is too ill to travel from his home
in Florida.

Milgroom first asserted that he was too ill to travel on February 11, 2008, when he asked the court to transfer this action to Florida, because, among other reasons, Milgroom's "doctors have told him that he should not travel long distances and subject himself to stress if he wants to live."  Doc. No. 306 ¶ IV(A)(1).  Milgroom reiterated this argument in a second motion filed March 20, 2008.  Doc. No. 380.  Milgroom did not support these motions with any evidence from doctors and Plaintiffs' counsel actually spoke with one of Milgroom's doctors who reported that he was able to travel.  In denying both motions, the court rejected Milgroom's bare assertions as reason for a transfer but invited Milgroom to file a proper motion -- that is, one supported by evidence.  Doc. No. 421.

On May 9, 2008, Milgroom filed a "Second Motion for Change of Venue" in which he attached two very cursory doctors' notes stating that Milgroom "should not travel long distances" and should "avoid travel."  Doc. No. 452 Exs. A-B.  Milgroom thus perfunctorily argued that his doctors "have told him that he should not travel alone or on long distances, and not to subject himself to stress."[6]  *Id.* ¶ III(C)(1)(a)(1).  In response, Plaintiffs notified the court that they

---

[6]  Other than this statement and the two doctors' notes, Milgroom spent the bulk of his second motion rehashing many of the same arguments he made in his first motion for change of venue, even though the court limited his second motion to the issue of his health.  *See* Doc. No.

(continued...)

6

were unable to file an Opposition until they conducted discovery regarding

Milgroom's health, *see* Doc. No. 467, and then filed a Motion to Compel

Milgroom to Submit to a Rule 35 Medical Examination ("Plaintiffs' Rule 35

Motion"), explaining that to date, Milgroom has refused to answer questions

regarding his medical condition and refused to sign an authorization for the release

of his medical records.  Doc. No. 468.  Despite the fact that discovery would, if

true, support Milgroom's assertions, Milgroom fought discovery by suggesting a

drawn-out procedure and objecting to the production of all but very limited

medical records.  *See* Doc No. 471.

     During a July 3, 2008 hearing on Plaintiffs' Rule 35 Motion, the court

ruled that it would permit discovery for Plaintiffs to better limit the scope of their

proposed Rule 35 examination.  *See* Doc. No. 474.  As a result, Milgroom reversed

his original position and asserted that he would make his medical records available

to Plaintiffs and sign an Authorization and Release of Information

("Authorization") approved by the court.  The court revised Plaintiffs' proposed

authorization and ordered that "[u]pon receipt, Milgroom *shall* promptly sign and

---

[6](...continued)
454 (striking Milgroom's arguments that go beyond the issue of his health).  The court later
found that these doctors' notes did not carry Milgroom's burden because they did not provide any
specific evidence regarding Milgroom's health and Milgroom provided no declaration
authenticating them.  *See* Doc. No. 507 at 6 n.3.

execute both the Stipulated Protective Order and Authorization." Doc. No. 476 at

5 (emphasis added).

Despite the court's clear mandate that Milgroom sign the

Authorization and his own unequivocal representation to the court that he would

comply, Milgroom refused to sign the Authorization and instead drafted his own

more limited authorization that would prevent Plaintiffs from receiving the full

scope of discovery contemplated by the court.  Specifically, Milgroom's

authorization did not allow Milgroom's doctors to speak with Plaintiffs' counsel,

was not notarized, and left unanswered the identities of his doctors for the past

five years.  *See* Doc. No. 507 at 7-8.  Despite this failure to sign the Authorization,

Milgroom continued to argue that venue should be transferred to Florida, claiming

(again without any evidentiary support) that he recently broke his back in two

places making him two inches shorter.  Doc. No. 503 ¶ 5(c).

Milgroom's failure to follow the court's order and present specific

evidence why he cannot travel was the basis for the court's September 4, 2008

Order denying Milgroom's Second Motion for Change of Venue:

> Milgroom's failure to sign the court's authorization prevented
> Plaintiffs from receiving necessary discovery concerning
> Milgroom's health, and Plaintiffs had no obligation to seek
> discovery using Milgroom's limited authorization where the
> court had already laid out the contours of discovery, tailored
> the authorization for that purpose, and ordered Milgroom to

8

> sign the court-approved authorization.  The court has afforded
> Milgroom multiple opportunities to explain why trial must be
> held in Florida, but his scant evidence regarding his health and
> failure to participate in discovery do not carry his burden.

*Valvanis v. Milgroom*, 2008 WL 4107986, at *3 (D. Haw. Sept. 4, 2008) (footnote omitted).

After this second denial, Milgroom filed requests for the court to reconsider its position on October 6, 2008 and October 31, 2008.  Doc. Nos. 529, 554.  Although Milgroom asserted that he had two spine operations[7] and was hospitalized for a month, *see* Doc. No. 529 ¶ 6, neither of Milgroom's motions included any evidence supporting these allegations -- no medical records, no doctors' diagnoses, hospital bills, nothing.  Milgroom did, however, offer to sign the court's Authorization.  Doc. Nos. 521, 529 ¶ 5.

Milgroom's continued refusal to produce any specific evidence to support his assertions regarding his health gave ample reason for the court to deny these requests.  *See* Doc. Nos. 531, 561.  The court also cautioned Milgroom that attendance at the Final Pretrial Conference was mandatory and failure to attend the Final Pretrial Conference "may result in sanctions, up to and including default being entered against him."  Doc. No. 531 at 7.

---

[7] Dr. Melendez explained that these "spine surgeries" were actually injections of a pain reliever to the spine area, which are conducted on an outpatient basis.

9

Despite the court's warning that trial would proceed, Milgroom complied with none of the pretrial deadlines. Specifically, the Fourth Amended Rule 16 Scheduling Order required the parties to: (1) exchange exhibits by October 21, 2008; (2) file a final comprehensive witness list by October 28, 2008; and (3) file a trial brief, special verdict form, concise statement of the case, and jury instructions by November 4, 2008.[8] Doc. No. 534. Milgroom filed none of these documents, did not seek a continuance of trial, and did not appear at the November 13, 2008 Final Pretrial Conference. Instead, on November 13, 2008, he filed (via facsimile) an "Emergency Ex Parte Motion" alleging that "Plaintiffs and this Court have been told many times by Milgroom that he is unable to travel to Hawaii for medical reasons and therefore he will not be present at any Hearing, Conference, or trial in Hawaii." Doc. No. 576 ¶ 2(a).

Milgroom's Emergency Ex Parte Motion, like his many previous motions requesting a change in venue, included no evidence regarding his alleged

---

[8] These are not the only required filings that Milgroom ignored. Milgroom never filed any initial disclosures or a RICO case statement as required by Local Rules. When asked during his deposition why he failed to file a RICO statement, Milgroom explained that:

> I already told you on the phone that what I put into my [motion for summary judgment] had sufficient information for the judge to rule on, and I said that it's more important that the court looks at, since I'm pro se, looks at the fact I -- that the -- the -- that the substance is more important than form following your local rules. It's the substance that counts.

Pls.' Ex. H at 128. Milgroom also failed to file final pretrial statements on March 18, 2008 as required by the Second Amended Rule 16 Scheduling Order, Doc. No. 133, and on September 2, 2008 as required by the Third Amended Rule 16 Scheduling Order, Doc. No. 391.

health problems.  However, on November 14, 2008, Milgroom filed an Ex Parte

Motion for (A) Leave to File and (B) Shorten Time for Notice of Hearing Re:

Motion for Reconsideration of Change of Venue ("Ex Parte Motion Regarding

Venue"), which for the first time included specific evidence regarding Milgroom's

health problems.  *See* Doc. No. 583.  Milgroom attached 650 pages of his medical

records and a "Medical Certificate" from Dr. Monina Mabuti, his primary care

physician, explaining that she does not believe Milgroom should travel because in

July 2008, Milgroom fell and fractured his back and on November 3, 2008,

Milgroom had what he described as a "near death" experience.[9]  *Id.* Exs. A, B.  In

a later declaration, Milgroom stated that he had signed the court's Authorization

and "will submit now to an independent medical examination immediately,

without having to wait until Plaintiffs get the records . . . ."  Doc. No. 589 ¶ 6(d).

On December 5, 2008, Dr. Mabuti and Dr. Melendez, Milgroom's

pain management doctor, both testified that they do not recommend Milgroom to

travel at this time given his health problems and the November 3, 2008 event.  For

purposes of entry of default, Plaintiffs do not contest that Milgroom was medically

unable to travel to Hawaii to attend the November 13, 2008 Final Pretrial

---

[9]  During the December 5, 2008 hearing regarding Milgroom's medical problems, Dr. Mabuti testified that Milgroom wrote the "Medical Certificate" that she signed.

Conference.

### 2. Events from Previous Actions

In addition to Milgroom's conduct in this action, Plaintiffs point to Milgroom's conduct in other actions as evidence of Milgroom's litigation strategy to avoid any adjudication on the merits.

Similar to this action, in the D'Ambrosio Action, Milgroom resisted discovery and trial in Massachusetts.  In its Findings of Fact, Rulings of Law and Rationale, the court noted Milgroom's litigation tactics:

> 126.  When suit was initiated, [Milgroom] frivolously resisted the jurisdiction of this Court, essentially stalling for time. Defendant resisted discovery at every turn thereby increasing the cost of litigation for all concerned.  His claims during discovery that he was elderly, frail, and unable to travel to Boston for depositions were belied by his international travel during the same time period and his robust and feisty appearance in Court during trial.

Pls.' Ex. 12 ¶ 126.

In the Bankruptcy Action,[10] after Milgroom refused to produce any financial records and testified that he destroys his financial documents as a regular practice, Pls.' Ex. G, he was ordered to execute bank authorizations and produce his laptop and financial documents for examination.  Pls.' Ex. 2.  Milgroom failed

---

[10]  Plaintiffs participated as creditors in the Bankruptcy Action and claim in this action that Milgroom fraudulently declared bankruptcy to prevent Plaintiffs from recovering any of his assets.

to comply with the bankruptcy court's Order and left Hawaii, providing neither

Plaintiffs nor his counsel his new address.  Pls.' Ex. 3 ¶ 3; *see also id.* Ex. A.  On

May 12, 2006, the bankruptcy court entered an Order finding Milgroom in

contempt of court and awarding sanctions.  Pls.' Ex. 4.  In finding Milgroom in

contempt, the bankruptcy court found that:

> [Milgroom] has failed and refused to comply with the Rule
> 2004 Order and the Order Compelling Compliance with Rule
> 2004 Order, despite reasonable opportunity and the ability to
> comply.  He has failed to account for millions of dollars in real
> estate and financial transactions with his wife and then ex-wife,
> Nada Martl, and the real estate transaction concerning the
> [Hawaii Property], or to offer any credible explanation
> regarding such transactions.

Pls.' Ex. 4 at 13.  Milgroom never purged himself of this contempt Order.

### 3.    *Milgroom's Explanations for his Conduct*

Milgroom offers a number of explanations for his conduct.  None of

his explanations, however, is based on ignorance, misunderstanding, or even

excusable neglect.  Instead, Milgroom acknowledges that he intentionally failed to

follow many of the court's orders, for which he now "humbly apologizes."  Doc.

No. 589 ¶¶ 11, 16; *see also* Doc. No. 603 ¶ A(3)(a).

Milgroom asserts that he did not comply with his discovery

obligations because, among other reasons, he used his own interpretation of the

orders, and he believed noncompliance would place him on "equal footing" with Plaintiffs.  *See* Doc. No. 589 ¶¶ 11, 16.  Milgroom further asserts that he refused to sign the court's Authorization granting Plaintiffs access to his medical files "for the reason that I do not agree with the unreasonably broad extent of the authorizations and do not want to waive my right to use this as one of the items in my Appeal to the Ninth Circuit by signing."  Doc. No. 503 ¶ 16.  Regarding pretrial deadlines, including deadlines predating the November 3, 2008 medical incident, Milgroom proffers that he did not comply because he believed it would be "morally wrong" where he could not travel to Hawaii for trial and he had notified the court that he could not travel.  Doc. No. 603 ¶ A(3)(b).  Finally, regarding his actions in the Bankruptcy Action, Milgroom asserts, among other things, that he had no knowledge of the contempt proceedings until he received a copy of the final judgment from his counsel.  Doc. No. 609 ¶ C(6).

Milgroom, a disbarred attorney, attempts to justify his belief that he could intentionally violate court orders -- he claims that his court experience "was confined to the United States Tax Court where 'substance' was more important than 'form.'"  Doc. No. 603 ¶ A(4)(b).  Milgroom claims that he recently spoke to his attorney representing him in the Massachusetts Action, and learned, apparently for the first time, that "defending my case does not include resisting court orders

compelling me to sign papers and to do things." Doc. No. 589 Ex. A.[11]

## B.     Procedural Background

On November 13, 2008, the court entered default against Milgroom

for his failure to attend the Final Pretrial Conference, and scheduled an evidentiary

hearing regarding Milgroom's alleged discovery abuses for November 14, 2008.

In the meantime, Milgroom filed his Emergency Ex Parte Motion on November

13, 2008, Doc. No. 576, and his Ex Parte Motion Regarding Venue on November

14, 2008.  Doc. No. 583.  At the November 14, 2008 hearing, the court granted

Milgroom leave to file his Ex Parte Motion Regarding Venue and rescheduled the

evidentiary hearing so that Milgroom could review proposed exhibits submitted by

Plaintiffs.  Doc. Nos. 579, 581.

On November 20, 2008, Milgroom filed a Declaration in Opposition

to Entry of Default and Entry of Default Judgment.  Doc. No. 589.  On November

24, 2008, Plaintiffs filed their Opposition to Milgroom's Ex Parte Motion

Regarding Venue.  Doc. No. 594.  Milgroom filed a Reply in support of his Ex

Parte Motion Regarding Venue on December 2, 2008, Doc. No. 603, and a

Supplemental Declaration in Opposition to Entry of Default on December 8, 2008.

---

[11] Milgroom fails to explain how practice in tax court would lead him to believe that he could intentionally violate, on a consistent basis, court orders.

15

Doc. No. 609.

The court held evidentiary hearings on November 25, 2008 regarding Milgroom's alleged discovery violations and on December 5, 2008 with Drs. Melendez and Mabuti regarding Milgroom's health.  On December 9, 2008, the court heard oral argument.

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  "Although the Rule refers only to the clerk's entry of default, it is undisputed that the court may impose a default as a sanction." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917 n.11 (9th Cir. 1992).

Rules 37(b)(2)(A)(vi), (c)(1)(C), and (d)(3) contemplate that default may be entered against a party for failure to comply with discovery orders.  *See also Hoxworth*, 980 F.2d at 919 (finding that default may be appropriate where the defendant fails "to comply with [the court's] own unambiguous orders to obtain substitute counsel, file a pretrial memorandum, and respond to the plaintiffs' discovery requests").  Further, Rule 16(f)(1)(C) provides that if a party "fails to obey a scheduling or other pretrial order," the court may order sanctions as

provided in Rule 37(b)(2)(A).  *See also Hoxworth*, 980 F.2d at 918 (stating that the "or otherwise defend" clause in Rule 55(a) is broadly interpreted and encompasses default entered against a party who fails to appear at trial so that the court may maintain "an orderly docket"); *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141 (9th Cir. 1989) (affirming Rule 55 default judgment against plaintiff on defendant's counterclaims where plaintiff did not attend pretrial conferences and "fail[ed] to attend on the first day of a trial scheduled months before").  "A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe" and appropriate only where there is "willfulness, bad faith, and fault."  *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (citation and quotation signals omitted); *see also Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997).

## IV.  <u>DISCUSSION</u>

The only credible explanation for Milgroom's numerous violations of court orders and rules is that Milgroom sought to prevent an adjudication of the merits of this action at any cost.  The appropriate sanction for Milgroom's course of conduct is entry of default against him.

///

///

17

## A.   Milgroom's Conduct Warrants Sanctions

Milgroom violated numerous court orders and rules by refusing to produce discovery, ignoring all pretrial deadlines, and bringing numerous unsupported motions to move this action to Florida.  When Milgroom's actions are viewed in their entirety, a clear pattern emerges that Milgroom committed these violations as part of an intentional scheme to prevent this action from proceeding to a trial on the merits.  Milgroom's course of conduct[12] is sanctionable.

Milgroom's pattern of conduct began with his refusal to participate in discovery by ignoring court orders compelling him to produce documents, fully answer and certify interrogatory responses, and sign an authorization allowing Plaintiffs access to his financial documents.  Information regarding Milgroom's finances is necessary for Plaintiffs to trace Milgroom's alleged fraudulent transfers of his assets to Martl.  Some of this information, however, is not accessible to Plaintiffs without Milgroom's assistance, *see* Doc. No. 158 Ex. C, making his

---

[12]  Plaintiffs argue that default should be entered against Milgroom based on any of several discrete violations he committed.  As described in this section, the court concludes that Milgroom committed these violations as part of an overall scheme and therefore views each violation within that context.

Plaintiffs also argue that the court should enter default against Milgroom for his failure to purge himself of the contempt order in the Bankruptcy Action.  The court rejects that Milgroom's contempt in the Bankruptcy Action can be a basis for sanctions in this action.  Nonetheless, Milgroom's conduct in the Bankruptcy Action is relevant in determining Milgroom's intent -- that is, that he willfully ignored court orders in this action.

refusal to provide discovery a severe hurdle to Plaintiffs' effort to obtain a full picture of Milgroom's financial dealings.  While Plaintiffs have reconstructed some of Milgroom's transactions through third party discovery with financial institutions, Milgroom's refusal to provide this information drove up litigation costs and Plaintiffs have no guarantee that they have the whole picture of Milgroom's financial dealings.  *See* Pls.' Ex. A ¶ 14 (explaining that Plaintiffs have not obtained all documents they sought from third parties).

Despite Milgroom's refusals to participate in discovery, this action continued and the trial appeared to be inevitable.  Thus, after a year and half as a litigant in this action, Milgroom began filing a series of motions arguing that he was too ill to travel to Hawaii for trial.  Milgroom's motions slowed this action considerably -- the court and Plaintiffs spent substantial time trying to determine whether Milgroom was indeed too ill to travel to Hawaii.  Milgroom, who carried the burden on these motions, refused to provide Plaintiffs discovery regarding his health problems, refused to follow this court's specific order to sign its Authorization allowing Plaintiffs meaningful access to his medical records despite his earlier assertions that he wold comply, and produced no specific evidence of his health problems until the very eve of trial.

Given Milgroom's indefensible position regarding discovery on his

19

health problems and complete failure to substantiate his assertions until after default was entered against him, these motions for change of venue were either (1) wholly frivolous at the time they were filed because they could not be supported by any credible evidence; or (2) a simple ruse to stall trial, as Milgroom could have supported the motions with credible evidence but refused to do so.[13] The court therefore denied all of Milgroom's motions for change of venue due to lack of evidence and warned Milgroom that trial would proceed in November 2008.  Milgroom still had no intention of attending trial, however, and let the pretrial deadlines pass without substantiating his medical condition.  It was only *after* the court entered default against him that Milgroom finally submitted evidence substantiating that he fractured his back in July 2008 and had a "near death" episode on November 3, 2008.

Given the number and extent of Milgroom's violations, the court can

---

[13]  The court rejects a third possibility -- that Milgroom did not understand what was required of him -- based on the record of this case.  The court denied Milgroom's first motion for change of venue for lack of evidence, but instructed Milgroom that the court would consider this issue again "upon proper motion and substantiation."  Doc. No. 421 at 17-18 n.11.  Milgroom subsequently failed to produce specific evidence regarding his health problems in support of a second motion and the court ordered him to sign its Authorization allowing Plaintiffs access to his medical records.  *See* Doc. No. 476 (ordering Milgroom to sign the court's Authorization).  At this point, *i.e.*, July 2008, it was clear that Milgroom needed to (1) sign the Authorization, and (2) produce evidence of his health problems.  Milgroom nonetheless refused to sign the Authorization and did not produce any specific evidence until after default was entered against him on November 13, 2008.

only conclude that each of these acts were part of a concerted effort to derail this action.  Milgroom knowingly violated court orders compelling him to comply with discovery, *see* Doc. No. 589 ¶¶ 11, 16; *see also* Doc. No. 603 ¶ A(3)(a), refused to sign the medical Authorization after specifically agreeing to do so, filed virtually identical unsupported motions for change of venue fully aware that they were insufficient, and unilaterally decided that he would not attend trial, even prior to his November 3, 2008 medical episode.  No credible explanation excusing Milgroom's conduct is possible in light of this record.

Indeed, Milgroom's own explanations for his conduct support the court's conclusion that he acted in bad faith to stall this action.  For example, Milgroom states that he did not comply with court orders compelling his compliance with discovery because "he used his own interpretation" of them and wanted to be on "equal footing" with Plaintiffs.[14]  *See* Doc. Nos. 589 ¶ 16, 603

---

[14]  Beyond these explanations, Milgroom offers a number of unbelievable excuses for his failure to follow court orders compelling his compliance with discovery requests.

Regarding his failure to sign the authorization for financial documents, Milgroom asserts that he believed Plaintiffs had received all the necessary documents when Plaintiffs participated in the Bankruptcy Action.  Doc. No. 589 ¶ 11(a-b).  This argument is belied by Plaintiffs' Motion to Compel which specifically explained that they could not receive all the relevant documents without an authorization, Doc. No. 158 Ex. C, as well as the fact that Milgroom never complied with discovery in the Bankruptcy Action.  *See* Pls.' Ex. 4.

Regarding the production of documents, Milgroom also asserts that he had no documents to produce and that Plaintiffs received Milgroom's documents from David Gierlach, Martl's counsel.  Doc. Nos. 589 ¶ 16, 603 ¶ A(8).  This assertion is false.  Plaintiffs' requests sought financial documents through the present.  Pls.' Ex. K.  Indeed, three months after discovery

(continued...)

¶ A(4)(a).  These orders, however, were clear on their face and mandated that

Milgroom provide discovery.  No reasonable interpretation would allow Milgroom

to act as he did -- Milgroom produced absolutely *no* documents to Plaintiffs, never

amended and certified his interrogatory responses, and never made any effort to

pay even a portion of the award of attorneys' fees.  Further, Milgroom was aware

of the consequences for failure to follow court orders through the Bankruptcy

Action where he was held in contempt for failing to comply with discovery.[15]

Milgroom also relies on his pro se status for leniency and explains

that he was using his understanding as a (disbarred) attorney whose experience in

------

[14](...continued)

closed, Milgroom attached as an exhibit to one of his many motions for change of venue his 2007 tax return.  *See* Doc. No. 529 Ex. A.  Further, while Plaintiffs did receive documents from Gierlach, this production does not release Milgroom from his obligation to produce these or any additional responsive documents.  *See also* Doc. No. 273 at 7-8 (explaining that Milgroom's agent, Anthony Mahfet, picked up documents held by Milgroom's previous counsel and that Gierlach received other documents held by another of Milgroom's previous counsel).

Regarding interrogatory responses, Milgroom also asserts that he did not certify his interrogatory responses because he did not believe Plaintiffs had certified their responses and he wanted to be on "equal footing."  Doc. No. 589 ¶ 16.  Again, this assertion appears to be false in light of the record.  Milgroom brought a motion to compel based on Plaintiffs' alleged failure to certify their responses, and in support of their Opposition, Plaintiffs submitted copies of their verifications declaring "under penalty and perjury" that their interrogatory answers were true and correct.  *See* Doc. No. 272 Ex. B.

[15]  Similar to his conduct here, in the Bankruptcy Action Milgroom refused to grant Plaintiffs access to information regarding his finances, refused to turn over his laptop computer despite a court order, admitted to destroying his financial records, and left Hawaii without giving his counsel or Plaintiffs his new address in Florida.  *See* Pls.' Ex. 3 ¶ 3, *see also id.* Ex. A.  As a result, the bankruptcy court entered a contempt order against Milgroom.  Milgroom's conduct in this action appears to be merely a continuation of a litigation scheme to prevent Plaintiffs from receiving evidence regarding Milgroom's finances.

the United States Tax Court led him to believe that "substance" was more important than "form." Doc. No. 603 ¶ A(4)(b); *see also* Pls.' Ex. H at 128 (testifying that "since I'm pro se [the court] looks at the fact I -- that the -- the -- that the substance is more important than form following your local rules"). Milgroom's explanation is ludicrous -- *no* court allows litigants to disobey orders and Milgroom complied with neither the substance nor the form of the majority of the court's orders. Further, Milgroom, as a disbarred attorney, is not entitled to any special treatment as a pro se litigant. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("We note, however, that *pro se* attorneys such as Holtz typically cannot claim the special consideration which the courts customarily grant to *pro se* parties." (citation and quotation signals omitted)); *Godlove v. Bamberger, Foreman, Oswald & Hahn*, 903 F.2d 1145, 1148 (7th Cir. 1990) ("[W]e treat the efforts of *pro se* applicants gently, but a *pro se* lawyer is entitled to no special consideration."); *Richards v. Duke Univ.* 480 F. Supp. 2d 222, 234 (D. D.C. 2007) ("Because plaintiff is an attorney, she is not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the court.").

Finally, regarding his numerous unsubstantiated motions for change

23

of venue, Milgroom proffers that he did not come forward with evidence until after default was entered against him because "the November 3, 2008 episode was merely the <u>first</u> time that Milgroom had <u>independent, qualified, and creditable witnesses</u> to the type of periodic heart episodes that have been occurring to him." Doc. No. 603, ¶ A(2)(b).  Milgroom's assertion is simply false.  Milgroom was under the care of physicians during the course of this litigation -- Dr. Mabuti testified that Milgroom has been her patient since March 2007, and the documents Milgroom finally did produce chronicle his medical visits since April 2007.  *See* Doc. No. 583 Ex. B at 633.  Milgroom could have requested copies of his medical files or sought his doctors' assistance to substantiate his claims, but deliberately chose not to produce credible evidence until after he stalled this action as much as possible.

In finding that Milgroom has acted in bad faith, the court recognizes that Milgroom has recently suffered legitimate health problems, but these health problems at most excuse only his failure to attend the Final Pretrial Conference. Milgroom's new health problems do not (1) explain his failure to comply with orders compelling him to comply with discovery; (2) substantiate his bare assertions in his motions for change of venue in February, March and May 2008; (3) explain why he failed to submit evidence regarding his July fall (resulting in

his back injury) in support of his motions filed in October 2008; or (4) justify his failure to sign the court's Authorization or comply with pretrial deadlines.  Indeed, Milgroom admits that he had no intention of coming to trial regardless of his recent health problems.  *See* Doc. No. 603 ¶ A(2)(a) ("Milgroom has explained repeatedly to the Court that his poor health prevents him from traveling to Hawaii, as stated in each of his Seven Motions for Change of Venue . . . ."); *id.* ¶ A(3)(b) (stating that he failed to comply with the pretrial requirements "because he knew that he could not be able to be at the Hawaii trial because it would be too great of a health risk for him to travel to and attend a Hawaii trial; however, he did notify the Court on a number of occasions that he could not travel to Hawaii because of his poor health").

In sum, Milgroom repeatedly acted in blatant disregard of the court's orders and made numerous frivolous motions.  Given the number and extent of them, the court does not believe that Milgroom's violations were merely the careless or ignorant missteps of a litigant unfamiliar with court procedures.  Rather, the court concludes that Milgroom's violations were willful and part of a scheme to prevent Plaintiffs from learning the extent of Milgroom's fraud and stop this action from proceeding on the merits.  Sanctions against Milgroom are warranted.

**B.     Entry of Default as a Sanction**

The Ninth Circuit applies a five-part test to determine whether default

is an appropriate sanction for discovery violations and/or Rule 16(f) violations,

weighing:

> (1) the public's interest in expeditious resolution of litigation;
> (2) the court's need to manage its dockets; (3) the risk of
> prejudice to the party seeking sanctions; (4) the public policy
> favoring disposition of cases on their merits; and (5) the
> availability of less drastic sanctions.  The sub-parts of the fifth
> factor are whether the court has considered lesser sanctions,
> whether it tried them, and whether it warned the recalcitrant
> party about the possibility of case-dispositive sanctions.

*Conn. Gen. Lif Ins. Co.*, 482 F.3d at 1096 (footnote, citation and quotation signals

omitted); *see also Nascimento v. Dummer*, 508 F.3d 905, 909 (9th Cir. 2007)

(applying factors for failure to participate in pretrial matters and sanctioning

pursuant to Rule 16); *Thompson v. Housing Auth. of City of L.A.*, 782 F.2d 829,

831 (9th Cir. 1986) (same).  "[T]he most critical factor is not merely delay or

docket management concerns, but truth, [*i.e.*,] whether the discovery violations

threaten to interfere with the rightful decision of the case."  *Conn. Gen. Life Ins.

Co.*, 482 F.3d at 1097 (quotation and citation signals omitted).  *But see Wanderer

v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) ("Thus the key factors are prejudice

and availability of lesser sanctions.").  "These factors are 'not a series of

26

conditions precedent before the judge can do anything,' but a 'way for a district judge to think about what to do.'"  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).  The court will consider each of these five factors.

First, the public's interest in expeditious resolution of litigation strongly favors entry of default.  "[T]he public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action' [and the] [o]rderly and expeditious resolution of disputes is of great importance to the rule of law."  *Id.* at 1227 (quoting Fed. R. Civ. P. 1).  Milgroom was keenly aware of his obligations to abide by court orders compelling him to participate in discovery, to comply with the pretrial procedures and deadlines, and to produce evidence to support his assertions that he was too ill to travel.  Instead, Milgroom acted in bad faith to stall this action.  To move forward with this case, the court would not merely have to restart the pretrial process anew but start from square one in determining whether venue should be transferred to Florida due to Milgroom's health.  The court was willing to engage in this process when Milgroom raised this issue, but Milgroom refused to sign the court's Authorization and failed to produce specific evidence regarding his health.  Milgroom's

frivolous positions delayed this action for months.  To allow Milgroom to restart this process at this late date -- which would necessarily involve discovery of Milgroom's medical records, interviews with Milgroom's doctors, and a possible Rule 35 independent medical examination -- would delay this action for additional months to come.  This factor weighs strongly in favor of entry of default.

Second, the court clearly needs to manage its docket.  The court must "manage cases so that disposition is expedited, wasteful pretrial activities are discouraged, the quality of the trial is improved, and settlement is facilitated." *Id.* To manage its docket, the court entered specific orders requiring Milgroom to: (1) produce discovery to Plaintiffs; (2) sign authorizations allowing Plaintiffs access to his financial information and medical records; and (3) submit pretrial documents as outlined in the Fourth Amended Rule 16 Scheduling Order. Milgroom's willful refusal to follow any of these orders stalled disposition of this action and wasted the court's time.  This factor also weighs in favor of entry of default.

Third, the risk of prejudice to Plaintiffs if the court does not enter default against Milgroom will be severe.  A party suffers prejudice where the non-complying party impairs the party's "ability to go to trial or threaten[s] to interfere with the rightful decision of the case." *Malone v. U.S. Postal Serv.*, 833 F.2d 128,

28

131 (9th Cir. 1987).  Unreasonable delay or a litigant's failure to produce documents as ordered may constitute prejudice.  *See In re PPA Prods. Litig.*, 460 F.3d at 1227.  Plaintiffs have patiently sought resolution of this action for over two and half years and expended numerous resources addressing Milgroom's meritless arguments and roadblocks to discovery.  Milgroom's actions have prevented Plaintiffs from obtaining all of Milgroom's financial documents and from receiving an efficient trial on the merits.  If the court did not enter default, Plaintiffs would face the proposition of additional lengthy discovery regarding Milgroom's health and have no clear indication when or where trial may occur.  That Milgroom has finally presented evidence regarding his health and signed the court's Authorization does not relieve the significant prejudice to Plaintiffs.  *See id.* ("Late tender is no excuse."); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts."); *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) (stating that "[b]elated compliance with discovery orders does not preclude the imposition of sanctions").  This factor weighs strongly in favor of default.

        Fourth, public policy favors disposition of cases on their merits.

However, "a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot move forward toward resolution on the merits."  *In re PPA Prods. Litig.*, 460 F.3d at 1228.  As discussed above, Milgroom has actively attempted to impede this action from reaching a disposition on the merits.[16]  This factor tips against entry of default.

Fifth, the court does not believe that lesser sanctions are available under these circumstances.  For example, the court could order Milgroom to pay Plaintiffs' attorneys' fees, but this sanction would not correct the delay in management of the court's docket, account for Milgroom's blatant disregard for court orders, or restore the prejudice of delay to Plaintiffs.  Further, Milgroom has asserted that he has no money to pay such fees and did not pay all or part of the court's previous sanctions award against him.  Merely awarding Plaintiffs their attorneys' fees and allowing Milgroom's latest motion for change of venue would effectively impose no sanction at all for Milgroom's willful conduct.  Alternatively, the court could deny Milgroom's latest motion for change of venue

---

[16]  Indeed, it appears that Milgroom has no interest in a true disposition on the merits and is simply trying to proffer any explanation that he believes might explain his actions.  Beyond his actions and explanations described above, Milgroom also asserts that he was merely trying to protect a $1,000,000 interest he has in the Hawaii Property.  *See* Doc. No. 589 ¶ 8.  This newly minted position directly contradicts his position throughout this litigation that he has no interest in the Hawaii Property, *see, e.g.*, Doc. No. 140 ¶¶ 10-12; as well as his bankruptcy filings stating that he has no interest in any real property.  Pls.' Ex. N.

as a sanction, but such order would be the equivalent of entering default against Milgroom.  Milgroom cannot attend trial at this time and he has asserted that he has no intention of traveling to Hawaii for trial.

Despite this lack of alternatives, the court is aware that this factor may weigh less strongly in favor of default because the court's warning regarding entry of default was limited to Milgroom's failure to attend the Final Pretrial Conference and trial.  With that said, however, a lesser sanction would not cure the prejudice already incurred by Plaintiffs or remedy the delay and time used by the court in dealing with these issues.  Nor would a lesser sanction ensure that Milgroom would now suddenly comply with court orders and participate in this action going forward.  Indeed, Milgroom has previously flouted lesser sanctions imposed on him.  *See* Doc. No. 372 (ordering Milgroom to pay Plaintiffs' attorneys' fees); Pls.' Ex. 4 (finding Milgroom in contempt in Bankruptcy Action). Finally, the court does not believe that Milgroom will stop his willful behavior going forward.  Milgroom "humbly apologized" for not following court rules and orders, but his apology is incredible in light of the fact that Milgroom is a disbarred attorney and the court orders were clear on their face.  Milgroom knew precisely what he was doing when he committed these violations.  In sum, a lesser sanction would be futile.

31

Considering all of these factors, the court concludes that default should be entered against Milgroom.  The court strongly prefers that cases be resolved on the merits, but this case presents extreme circumstances of a defendant who took every effort to derail its efficient adjudication.  Milgroom's willful conduct merits entry of default.

## V.  <u>CONCLUSION</u>

Based on the above, the court ENTERS DEFAULT against Milgroom.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 30, 2008.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Valvanis et al. v. Milgroom et al.*, Civ. No. 06-00144 JMS/KSC, Order Entering Default Against Defendant Robert B. Milgroom