IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARY VALVANIS, JOHN VALVANIS AND GEORGE VALVANIS,<br><br>                Plaintiffs,<br><br>        vs.<br><br>ROBERT B. MILGROOM, and NADA MARTL aka NADA R. MILGROOM,<br><br>                Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 06-00144 JMS-KSC<br><br>ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT NADA R. MARTL AS TO THE FIRST AMENDED COMPLAINT |

## ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT NADA R. MARTL AS TO THE FIRST AMENDED COMPLAINT

## I. INTRODUCTION

Plaintiffs Mary, John, and George Valvanis ("Plaintiffs" or "Valvanis Family") allege that Defendants Robert B. Milgroom ("Milgroom") and Nada Martl ("Martl") (collectively, "Defendants") engaged in a scheme to hide and shield assets from Milgroom's creditors, including Plaintiffs, by using Milgroom's money to purchase real property located in Honolulu, Hawaii (the "Hawaii Property") and then transferring the Hawaii Property to Martl. Plaintiffs seek, among other things, to satisfy Milgroom's debt to Plaintiffs through the Hawaii

Property.

On February 2, 2009, Plaintiffs filed separate Motions for Default Judgment against both Milgroom and Martl.  Default has been already entered against each Defendant for very different reasons.  Default was entered against Martl on December 14, 2007 after she failed to file an answer to the First Amended Complaint ("FAC").  Since this time, Martl has not substantively participated in this action and the court has declined to enter default judgment against her until the claims against Milgroom are adjudicated to prevent the possibility of inconsistent judgments.  In comparison, the court entered default against Milgroom on December 30, 2008 as a sanction for his willful conduct of violating numerous court orders and rules in an attempt to prevent this action from proceeding on the merits.

Given these very different contexts of default against each Defendant, the court addresses each of Plaintiffs' Motions for Entry of Default Judgment in separate orders and finds that default judgment against both Defendants is warranted.  In this Order, the court GRANTS Plaintiffs' Second Motion for Entry of Default Judgment Against Martl on their claims in the FAC for fraudulent conveyance pursuant to Hawaii Revised Statutes ("HRS") ch. 651C, Hawaii Uniform Fraudulent Transfer Act ("HUFTA"), and civil conspiracy to defraud.

## II. <u>BACKGROUND</u>

**A.    Factual Background**[1]

Plaintiffs allege that Defendants engaged in an elaborate scheme to hide and shield assets from Milgroom's creditors, including Plaintiffs.

### 1.    *Plaintiffs' Claims as Creditors of Milgroom*

Plaintiffs allege that they became Milgroom's creditors from business dealings that occurred in the 1980s and which are the basis of litigation spanning from 1987 through the present.  In April 1987, Plaintiffs filed a lawsuit against Milgroom in Massachusetts (the "Massachusetts Action") alleging that he "wrongfully used his influence as attorney and certified public accountant over the Valvanis Family business" to shift for his benefit business worth $2,000,000 and real estate worth $2,000,000.  FAC ¶ 9.

---

[1] Plaintiffs present much more evidence in support of entry of default judgment against Milgroom than they do in support of entry of default judgment against Martl.  The court attributes this difference to the contrasting contexts in which default was entered against each Defendant.  Entry of default as a sanction occurs only in extraordinary circumstances, which was the case for Milgroom.  *See Valvanis v. Milgroom*, 2008 WL 5412420, at *12 (D. Haw. Dec. 30, 2008) (concluding that default was warranted because "this case presents extreme circumstances of a defendant who took every effort to derail its efficient adjudication").  The court therefore requires Plaintiffs to actively present evidence showing the merits of their claims against Milgroom.  *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (stating that the district court "exceeded the requirements of [Rule 55] by taking extensive evidence on *all* allegations in the complaint including damages").  In contrast, Martl has wholly failed to participate in this action for over 18 months and the court therefore applies "the general rule [] that well-pled allegations in the complaint regarding liability are deemed true [and] [t]he district court is not required to make detailed findings of fact."  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

In December 1991, the parties agreed to refer their dispute to a special master to "make findings of fact and conclusions of law [that] shall be final and binding on the parties."  Martl Decl. Ex. A.[2]  In 1994, a Special Master in the Massachusetts Action issued his "Special Master's Report," which, under "Ultimate Primary Findings," found that Plaintiffs owed Milgroom $150,000.  *See* Doc. No. 74, Martl Ex. B-1 (attaching portions of Special Master's Report).  After the Special Master's Report, both parties participated in the Massachusetts Action - - the parties filed motions for extensions to file objections to the Special Master's Report, Doc. No. 624, Pls.' Ex. 11 (docket entries 90-94), Milgroom's attorney filed a motion to withdraw, *id.* (docket entries 97a, 98b), and Milgroom appeared pro se.  *Id.* at Pls.' Ex. 15 ¶¶ 12, 18.

The Massachusetts Action then stalled for several years, but began to move forward again in the early 2000s.  *Id.* at Pls.' Ex. 11.  On October 18, 2005, the court in the Massachusetts Action entered default against Milgroom after he failed to appear for a final pretrial conference or otherwise participate in the action.

---

[2]  As explained below, the court strikes the Martl Declaration, but nonetheless addresses some of the arguments made in this document.  Accordingly, the court cites to the exhibits attached to the Martl Declaration in providing a description of the facts.  The Martl Declaration refers to four exhibits -- three regarding the Massachusetts Action and a February 12, 2009 letter Milgroom sent to the court.  Because the Martl Declaration did not attach two exhibits regarding the Massachusetts Action, the court cites to them from other filings and cites to additional exhibits regarding the Massachusetts Action to provide a full picture of those proceedings.

FAC ¶ 42; *see* Doc. No. 624, Pls.' Exs. 11 (docket entry 112), 12 (warning

Milgroom that he must appear at the October 18, 2005 pretrial conference or

default will be entered against him).  In August 2007, the court in the

Massachusetts Action entered judgment in favor of Plaintiffs.  *See* Pls.' Ex. G.  As

of October 5, 2007, $3,881,612.14 was due and owing under this Judgment, which

included pre-judgment and post-judgment interest through that date.  *Id.* ¶ 3.

### 2.   *Milgroom and Martl*

Milgroom married Martl on September 11, 2001, six months after his

first wife passed away.  FAC ¶ 18.  Prior to their marriage, Defendants were

involved together in two Florida real estate investment companies.  *Id.* ¶¶ 14-17.

Martl agreed to marry Milgroom and give up her real estate business in exchange

for half of Milgroom's net worth, which was estimated to be at least $10 million.

*Id.* ¶¶ 19-20; Pls.' Ex. R at 111-12; *see also* Pls.' Ex. S at 5 (stating that prior to

moving to Hawaii, Milgroom maintained up to $11.5 million in a number of

different accounts and institutions).  In lieu of giving Martl $5 million, Milgroom

asserts that he added her name to all of his financial accounts.  FAC ¶ 21; Pls.' Ex.

R at 136.

Despite Milgroom's assertion and their purported agreement for

Milgroom to give Martl only half of his net worth, Milgroom actually transferred

$9 million of his funds to Martl, who deposited them in a German bank account. *See* FAC ¶ 23 (asserting that Martl opened a bank account in Germany and transferred "a significant portion" of Milgroom's money to it); *see also* Pls.' Ex. S at 6 (stating that as of the time of his expert report, Plaintiffs' expert determined that Milgroom withdrew $7.3 million from his Treasury Direct accounts and transferred them to other accounts). Plaintiffs have presented evidence that in March 2002, Milgroom transferred $1.05 million of his funds and $950,000 of their joint funds to Martl's Bank of America checking account and Martl then transferred the resulting $2 million to her German bank account. Pls.' Ex. N (collecting Milgroom and Martl's financial documents and showing transfers of funds from various accounts to Martl's German bank account). That same month, Milgroom sold, before their maturity dates, several of his Treasury Direct securities totaling over $4.5 million and ultimately had those funds transferred to Martl's German bank account. Pls.' Ex. O. In April 25, 2002, Martl transferred to her German bank account an additional $2.7 million, which can be traced back to Milgroom's funds. *See* Pls.' Ex. K (collecting Milgroom and Martl's financial documents showing transfers of funds from Milgroom's personal funds to purchase real property and a yacht, only to be sold shortly thereafter and the funds deposited in Martl's account).

### 3. *The Hawaii Property*

On August 2, 2002, Defendants purchased the Hawaii Property,

located at 253 Puuikena Drive, Honolulu, Hawaii 96821, for $5.2 million cash.

FAC ¶ 24.  At the time Defendants purchased the Hawaii Property, they were

aware of the Massachusetts Action.  *Id.* ¶ 25.

The Hawaii Property payment came from funds that originated in

whole or in substantial part from Milgroom's estimated $10 million net worth.  *Id.*

¶ 26.  Specifically, on July 12, 2002, $6,499,982 was wire transferred from Martl's

German bank account to First Hawaiian Bank and deposited into Defendants' joint

checking account.  Pls.' Ex. P at 177.  Milgroom then drew a check from this

account for $7,125,000 payable to Milgroom, and deposited it into Defendants'

joint savings account.  *Id.* at 70, 196.  Milgroom then used these funds to purchase

the Hawaii Property.  *Id.* at 121, 340.

On May 13, 2003, Milgroom transferred his interest in the Hawaii

Property to Martl for no consideration.  FAC ¶ 29.  Milgroom transferred the

Hawaii Property to Martl with actual intent to hinder, delay, or defraud Plaintiffs

with respect to their claims in the Massachusetts Action.  *Id.* ¶ 69.  Further, at the

time or as a result of the transfer of the Hawaii Property to Martl, Milgroom was or

became insolvent.  *Id.* ¶ 30.

### 4.   *Milgroom and Martl Divorce*

On June 14, 2005, Martl filed for divorce against Milgroom. *Id.* ¶ 33.

Milgroom completed the documents for the divorce and both Milgroom and Martl

certified under penalty of perjury that the information was true and correct. *Id.*

¶ 34.  Defendants, however, included "a multitude of knowingly false and

misleading information" to expedite the divorce process, which was granted only

two weeks later on June 28, 2005. *Id.* ¶¶ 35, 37.  In the divorce papers, Defendants

failed to identify income and expenses, failed to identify bank accounts, and failed

to provide values for their assets. *Id.* ¶ 35.  Milgroom also executed a Release of

Marital Interest in the Hawaii Property, which states that "for consideration paid,

[he] hereby releases all of his marital interests in this said property," even though

he did not receive any consideration. *Id.* ¶ 36.

After the divorce, Milgroom continued residing in the Hawaii

Property and treating it as his own. *Id.* ¶ 38.  Martl also provided Milgroom

$50,000 to pay for Milgroom's living expenses and tens of thousands of dollars to

pay for Milgroom's attorneys' fees. *Id.* ¶ 43.

### 5.   *Milgroom Declares Bankruptcy*

On July 11, 2005, only two weeks after the divorce decree, Milgroom

filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the

District of Hawaii. *Id.* ¶ 40. In August 2005, Milgroom converted his bankruptcy case to Chapter 13, in part, to avoid investigation and action by the Chapter 7 trustee after she identified his fraudulent transfers of property and warned him not to transfer any more property during the pendency of the proceedings. *Id.* ¶ 41.

Like the divorce proceedings, Milgroom provided false and misleading information about his financial affairs in the bankruptcy proceeding. *Id.* ¶ 43. Plaintiffs later began to participate in the bankruptcy action as creditors and attempted to gather discovery from Milgroom. *Id.* ¶ 44. In response, Milgroom refused to comply with discovery and ultimately absconded to Florida. *Id.* ¶¶ 45-46, 65. Martl also left Hawaii (and the United States) without participating in the bankruptcy action. *Id.* ¶ 64.

On May 12, 2006, the bankruptcy court entered an order (1) finding Milgroom in contempt of court, (2) awarding sanctions, (3) granting Plaintiffs relief from the automatic stay nunc pro tunc, and (4) denying Plaintiffs' request for a bench warrant. *Id.* ¶ 47. The bankruptcy court noted that Plaintiffs had "submitted substantial evidence concerning questionable transfers of [Milgroom's] interest in real property in Florida and in Hawaii to Martl during a four-year period prior to [Milgroom's] bankruptcy petition, including without limitation, the transfer of [Milgroom's] interest in the [Hawaii Property] in 2003 for no

consideration." *Id.* ¶ 48; Pls.' Ex. H at 8 ¶ 23.  The bankruptcy court further found

that Plaintiffs have "produced compelling evidence that [Milgroom] has engaged in

fraudulent real estate and financial transactions with his wife, and then, ex-wife,

Martl, between 2002 and the present.  It also appears that there is an on-going

relationship between [Milgroom] and Martl."  FAC ¶ 50; Pls.' Ex. H at 12 ¶ 33.

The bankruptcy court concluded that Milgroom "has failed to account for millions

of dollars in real estate and financial transactions with his wife and then ex-wife,

Nada Martl, and the real estate transaction concerning the [Hawaii Property], or to

offer any credible explanation regarding such transactions."  FAC ¶ 5l; Pls.' Ex. H

at 13 ¶ 3.

### 6.     *Martl Attempts to Sell the Hawaii Property Below Market Value*

After leaving Hawaii, Martl listed the Hawaii Property for sale with

an asking price of $6,500,000.  FAC ¶ 54.  This listing price is less than the 2005

tax assessed value of $7,442,800, and prices for comparable homes in the area

listing for $8,000,000 at the time.  *Id.* ¶ 54.

### B.     Procedural History

Plaintiffs filed a Complaint against Martl on March 10, 2006, and

their FAC against Martl and Milgroom on May 23, 2006.  In their FAC, Plaintiffs

allege that the Hawaii Property transfer to Martl was fraudulent and seek damages

and equitable relief.  The FAC alleges claims of: (1) Fraudulent Conveyance Under

HRS ch. 651C, HUFTA; (2) Civil Conspiracy to Defraud; (3) Common Law

Fraudulent Transfer; (4) Constructive and/or Resulting Trust and/or Equitable

Lien; (5) Injunction Against Further Disposition of the Hawaii Property; and

(6) Appointment of Receiver.[3]

On December 14, 2007, Plaintiffs filed a Motion for Leave to File

Second Amended Complaint, and a Request for Entry of Default against Martl,

based on her failure to answer or otherwise plead to the FAC.  The Clerk of Court

entered default that same day.[4]  On December 19, 2007, Martl's counsel moved to

set aside the entry of default, which Magistrate Judge Chang denied on February 7,

2008 due to the prejudice to Plaintiffs that would result because Martl had failed to

participate in this litigation and there was no assurance that Martl would participate

going forward.  Magistrate Judge Chang relied on the fact that Martl had failed to

provide any address (whether to Plaintiffs, the court, or even her own counsel), and

_____

[3]  The FAC also included claims for spoliation of evidence and enforcement of contempt
order and judgment, which the court dismissed in its November 17, 2007 Order.  *See Valvanis v.
Milgroom*, 529 F. Supp. 2d 1190, 1205 (D. Haw. 2007).

[4]  This was the second time that the Clerk of Court entered default against Martl.  On July
24, 2006, Martl, represented by new counsel, filed a motion to set aside default entered on July
11, 2006.  Martl argued, among other things, that (1) her previous counsel did not notify her that
her answer was due until one day prior to the deadline, and (2) Martl's son Christian Maertl
("Maertl") had notified Plaintiffs that Martl needed additional time to answer due to illness.  On
September 18, 2006, Magistrate Judge Chang granted Martl's motion to set aside default.

refused to respond to discovery requests.  Magistrate Judge Chang further found that the totality of the circumstances and the history of this case provided an increased opportunity for collusion if the entry of default was set aside -- Martl's son Christian Maertl ("Maertl") was attempting to represent her in this action, but he is not an attorney, lives with Milgroom, and could not verify Martl's whereabouts.  On February 28, 2008, the court affirmed the February 7, 2008 Order on these same bases.  *Valvanis v. Milgroom*, 2008 WL 538667 (D. Haw. Feb. 28, 2008).

On March 5, 2008, Plaintiffs filed a Motion for Entry of Default Judgment against Martl.  Martl appeared to file two Oppositions -- one through her counsel, and a second which she purportedly signed.  Despite allegedly submitting her own Opposition, the court doubted that Martl truly filed this document -- her counsel still did not know her whereabouts, Martl failed to confirm her address, and both Maertl and Milgroom had previously improperly attempted to advocate on Martl's behalf.[5]  *See Valvanis v. Milgroom*, 2008 WL 2150956, at *4 (D. Haw. Apr. 17, 2008).

---

[5]  Martl's counsel filed several motions to withdraw as counsel due in large part to his inability to contact his client.  Magistrate Judge Chang denied these motions because, among other reasons, Martl's counsel was unable to provide a current address for Martl as required by Local Rule 83.6 ("A motion to withdraw must specify the reasons for the withdrawal . . . and the name, address, and telephone number of the client.").  The court denied Martl's counsel's appeal.

On April 17, 2008, Magistrate Judge Chang entered his Findings and Recommendations that default judgment be entered against Martl (the "April 17 F&R").  *Id.*  On May 20, 2008, the court rejected the April 17 F&R due to the possibility of inconsistent judgments between Martl and Milgroom, which provided "just reason for delay in entering default judgment against Martl until after the claims against Milgroom have been adjudicated."  *Valvanis v. Milgroom*, 2008 WL 2150952, at *4 (D. Haw. May 20, 2008).

On December 30, 2008, the court entered default against Milgroom as a result of his willful conduct of violating numerous court orders and rules in an attempt to prevent this action from proceeding on the merits ("Order Entering Default Against Milgroom").  *Valvanis v. Milgroom*, 2008 WL 5412420 (D. Haw. Dec. 30, 2008).

On February 2, 2009, Plaintiffs filed Motions for Default Judgment against both Milgroom and Martl.  On February 26, 2009, the court received a document titled "Declaration of Nada Martl in Opposition to Plaintiffs' Motions for Defaults and Default Judgments" (the "Martl Declaration"), purportedly filed pro se by Martl.[6]  On March 3, 2009, Plaintiffs filed a Reply.  On March 17, 2009,

---

[6]  In support of his Opposition to Plaintiffs' Motion for Entry of Default Judgment against him, Milgroom submitted Christian Maertl's Declaration in Support of Defendants' Opposition to Plaintiffs' Motion for Default Judgment.  To the extent Milgroom intended

(continued...)

the court ordered Martl's counsel, David A. Gierlach ("Gierlach") to file a

statement explaining his reasons for not filing an opposition on Martl's behalf.

Doc. No. 648.  On March 19, 2009, Gierlach filed a Declaration stating that he did

not file an opposition because he has had no communication with Martl for the last

18 months despite his efforts.  Doc. No. 649, Gierlach Decl. ¶¶ 4-5.  A hearing was

held on April 27, 2009 on Plaintiffs' Motions for Entry of Default Judgment

against both Milgroom and Martl.  On May 7, 2009, Plaintiffs submitted a

supplemental memorandum addressing judgment.

## III.  <u>STANDARD OF REVIEW</u>

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff may

apply to the court for a default judgment against a defendant who has appeared in

the action.  *See also Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141 (9th Cir.

1989) (stating that Rule 55(b)(2) "applies to entry of default judgment when the

party suffering the default has appeared in the action").

A "court's decision whether to enter a default judgment is a

discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980);

---

[6](...continued)
Maertl's Declaration to apply to Plaintiffs' Second Motion for Entry of Default Judgment against
Martl, this Declaration is improper for several reasons -- it was not timely filed, it presents
largely only argument as opposed to facts, and the facts Maertl does present are either based on
no personal knowledge (*e.g.*, the Massachusetts Action), or are irrelevant (*e.g.*, Maertl's
conversations with Martl's attorney David A. Gierlach ("Gierlach") regarding representing
Martl).  Accordingly, the court STRIKES the Maertl Declaration.

*Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986).  The court's starting point,

however, is that "default judgments are ordinarily disfavored" and that "[c]ases

should be decided upon their merits whenever reasonably possible."  *Eitel v.*

*McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  In exercising its discretion, the

court should consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the
> merits of plaintiff's substantive claim, (3) the sufficiency
> of the complaint, (4) the sum of money at stake in the
> action; (5) the possibility of a dispute concerning
> material facts; (6) whether the default was due to
> excusable neglect, and (7) the strong policy underlying
> the Federal Rules of Civil Procedure favoring decisions
> on the merits.

*Id*. at 1471-72.

"With respect to the determination of liability and the default

judgment itself, the general rule is that well-pled allegations in the complaint

regarding liability are deemed true."  *Fair Housing of Marin v. Combs*, 285 F.3d

899, 906 (9th Cir. 2002); *see DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th

Cir. 2007) ("In reviewing a default judgment, this court takes the well-pleaded

factual allegations in the complaint as true." (citations and quotations signals

omitted)); *see also* Fed. R. Civ. P. 8(b)(6).  The entry of default conclusively

establishes the facts as to liability, but not damages.  *See Geddes v. United Fin.*

*Group*, 559 F.2d 557, 560 (9th Cir. 1977).  While the court may conduct a hearing

15

to determine damages, *see* Fed. R. Civ. P. 55(b)(2), the court can rely on evidence

submitted by Plaintiffs or conduct a hearing if necessary.  Fed. R. Civ. P. 55(b)(2);

*see Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

## IV.  **DISCUSSION**

### A.    **Martl's Declaration**

As an initial matter, Plaintiffs ask the court to strike the Martl

Declaration as improper because it appears to be submitted by Milgroom and/or

Maertl and fails to comply with the requirements for an admissible declaration.

The court agrees that Martl's Declaration should be stricken.

First, the court has no assurance that Martl truly filed the Martl

Declaration.  The court has repeatedly expressed concern that there is no clear

indication that Martl is currently aware of the status of this action.  For the last 18

months, Martl has not communicated with her counsel, despite his efforts to

contact her.  Gierlach Decl. ¶¶ 4-5.  Further, Magistrate Judge Chang refused to set

aside default against Martl in part because she failed to provide any current address

-- whether to Plaintiffs, the court, or even her own counsel.  Martl never corrected

this glaring deficiency, and over this time, Milgroom and Maertl have instead

improperly filed documents on her behalf.  *See C.E. Pope Equity Trust v. United

States*, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-attorney may appear *in*

*propria persona* in his own behalf, that privilege is personal to him.  He has no authority to appear as an attorney for others than himself." (citations omitted)). The court cannot determine whether Martl, or Milgroom and/or Maertl filed the Martl Declaration.  Martl's Declaration lists her address as 6216 N.W. 24th Street, Boca Raton, Florida 33434, the same address as Milgroom and Maertl, but this address is apparently wrong because the signature page lists Martl's location as Munich, Germany.  Given her continuing refusal to provide her current address and the inconsistencies with her location in the Martl Declaration, the court has no assurance that Martl filed this Declaration and she may not even be aware of the status of this action.

Second, even if Martl did file the Martl Declaration, it is nonetheless improper.  Local Rule 10.2(b) requires that all papers presented for filing provide the name, address, telephone number, facsimile number, and email address of the counsel or party submitting the paper.  Martl admits that she does not reside in Florida and she has therefore provided an incorrect address to the court.  It is fundamentally unfair for Martl to assume that she can participate in this action at her whim and at the same time not provide an address where Plaintiffs and the court can contact her.  This unfairness is only amplified where the court has warned Martl that she must submit her current address to the court.  Martl's failure

17

to comply with Local Rules warrants sanctions.[7]  *See* Local Rule 11.1 (allowing the court to sua sponte impose sanctions for failure to comply with any provision of the Local Rules).

For these reasons, the court STRIKES Martl's Declaration.

**B.    Default Judgment**

Plaintiffs argue that the *Eitel* factors weigh in favor of entry of default judgment against Martl as to their HUFTA and conspiracy claims.[8]  Based on the following, the court agrees that Plaintiffs are entitled to entry of default judgment and damages as to this claim.

---

[7]  Further, to the extent Martl's Declaration is indeed a declaration as opposed to an opposition memoranda, it fails to comply with Local Rule 7.6, requiring that a declaration "contain only facts," and 28 U.S.C. § 1746, requiring that a declaration be subscribed "as true under penalty of perjury."

[8]  Plaintiffs originally sought default judgment on their claims against Martl for HUFTA violations, common law fraudulent transfer, constructive and/or resulting trust and/or equitable lien, injunction against further disposition of the Hawaii property, and appointment of receiver. During a February 18, 2009 status conference, Plaintiffs' counsel confirmed that the common law fraudulent transfer claim was redundant of the HUFTA claim, and Plaintiffs' other claims assert requests for relief available under HUFTA and are therefore derivative.  *See* HRS § 651C-7; *see also Kekona v. Abastillas*, 113 Haw. 174, 182, 150 P.3d 823, 831 (2006) (noting that the appeals court stated that the common law preferential transfer rule was superceded by HUFTA). Accordingly, the court addresses only Plaintiffs' HUFTA and conspiracy claims.

**1.      Consideration of the Eitel Factors**

      a.      *Sufficiency of the FAC and merits of claims*

Martl has not participated in this action in over 18 months and has not answered the FAC.  The court therefore takes the well-pled allegations of the FAC as true and performs a single inquiry regarding the merits of Plaintiffs' substantive claims and the sufficiency of the FAC.  *See Fair Housing of Marin*, 285 F.3d at 906; *DIRECTV, Inc.*, 503 F.3d at 854; *see also* Fed. R. Civ. P. 8(b)(6).

      i.      Violation of HUFTA

Plaintiffs proceed under two theories of HUFTA: (1) that Milgroom transferred his assets to Martl with intent to defraud his creditors, and (2) that Milgroom transferred assets to Martl and did not receive a reasonably equivalent value in exchange for the transfer and knew, or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.  As described in the court's November 17, 2007 Order Denying Defendants' Motions to Dismiss and/or for Summary Judgment ("November 17, 2007 Order"), Plaintiffs have sufficiently pled facts in the FAC to support claims under both these theories.

Specifically, to state a claim under the first theory, Plaintiffs must plead that they are creditors of Milgroom, that Milgroom transferred the Hawaii Property before or after Plaintiffs' claim arose, and that Milgroom "acted with

19

actual intent to hinder, delay, or defraud" his creditors.  *See* HRS § 651C-4(a)(1).[9]

The November 17, 2007 Order explained that the FAC particularly pled all of these elements:

> In support of their creditor status, Plaintiffs allege that they filed the Massachusetts Action in 1987 seeking approximately $4,000,000 in damages. [FAC] ¶ 9. . . . Given that the definition of "creditor" includes individuals whose right to payment is not yet reduced to judgment, Plaintiffs under these facts may be afforded creditor status under HUFTA.  *See* HRS § 651C-1 (defining a "claim" of a creditor as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.").
>
> In describing the "conveyance," Plaintiffs have alleged that:  (1) Milgroom and Martl purchased the Hawaii Property on August 2, 2002 with $5.2 million cash, [FAC] ¶¶ 24, 26; (2) the $5.2 million cash is traceable to Milgroom's $10 million net worth, *id.* ¶ 26; (3) Milgroom transferred the Hawaii Property to Martl on May 13, 2003, *id.* ¶ 29; and (4) during their divorce, Milgroom signed a release of marital interest in the Hawaii Property.  *Id.* ¶ 36.  Finally, Plaintiffs have alleged that Milgroom transferred the Hawaii Property to Martl with actual intent to hinder, delay or defraud the

---

[9] HRS § 651C-4 provides that:
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

Valvanis Family with respect to their claims raised in the Massachusetts Action.  *Id.* ¶ 69.

*Valvanis v. Milgroom*, 529 F. Supp. 2d 1190, 1198 (D. Haw. 2007).

To state a claim under the second theory, Plaintiffs may proceed under either HRS § 651C-4(a)(2)(B) or HRS § 651C-5(a).  Under HRS § 651C-4(a)(2)(B), Plaintiffs, in addition to pleading that Milgroom transferred property, must plead that Milgroom (1) did not receive "a reasonably equivalent value in exchange for the transfer," and (2) "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."[10]  Similar to HRS § 651C-4(a)(2)(B), HRS § 651C-5(a) requires that (1) Milgroom did not receive a reasonably equivalent value in exchange for the Hawaii Property transfer, (2) Milgroom was insolvent at the time of the Hawaii Property transfer, or became insolvent as a result of the transfer, and (3) Plaintiffs were present creditors of Milgroom at the

---

[10]  HRS § 651C-4(a)(2)(B) provides:
    (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
    . . .
        (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
            (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

time of the Hawaii Property transfer.[11]

The November 17, 2007 Order again explained that the FAC alleged

each of these elements:

> Plaintiffs have alleged that (1) in return for the 2003
> Hawaii Property transfer, Martl paid no consideration,
> "or, in the alternative, Milgroom did not receive
> reasonably equivalent value in exchange for the transfer,"
> [FAC] ¶ 29; and (2) as a result of the Hawaii Property to
> transfer to Martl, Milgroom became insolvent. *Id.* ¶ 30.
> Further, since Plaintiffs' "claim" arose prior to the
> Hawaii Property transfer, Plaintiffs have alleged that they
> are present creditors of Milgroom.

*Id.* at 1199.

Because Plaintiffs have adequately pled all the elements of their

HUFTA claim against Martl and these allegations are deemed admitted pursuant to

the entry of default, the court finds that the merits of this claim and the sufficiency

of the FAC weigh in favor of entry of default judgment.

ii.    Conspiracy

While "the tort of conspiracy has not been clearly defined" in Hawaii

---

[11]  HRS § 651C-5(a) provides:
> A transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor whose claim arose before the transfer was made or the obligation
> was incurred if the debtor made the transfer or incurred the obligation
> without receiving a reasonably equivalent value in exchange for the
> transfer or obligation and the debtor was insolvent at that time or the
> debtor becomes insolvent as a result of the transfer or obligation.

caselaw, *Weinberg v. Mauch*, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995) (citation

and quotation signals omitted), at least one Hawaii court has recognized a claim for

conspiracy to fraudulently transfer property.  *See Kekona v. Abastillas*, 113 Haw.

174, 180, 140 P.3d 823, 829 (2006) (stating that the appeals court did not err in

affirming liability for conspiring to fraudulently transfer real property).

    In general, the common law tort of civil conspiracy has three

elements: (1) the formation of a conspiracy; (2) wrongful conduct in furtherance of

the conspiracy, *i.e.*, an actionable claim based upon deceit; and (3) damage.

*Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996) (citing elements under

California law); *see also Weinberg*, 78 Haw. at 49, 890 P.2d at 286 ("[I]t is clear

that there can be no civil claim based upon a conspiracy alone.  [If a plaintiff does]

not set forth any actionable claim based upon deceit, there can be no claim against

any alleged joint tortfeasor based solely upon conspiracy to deceive.").

    As described above, the FAC adequately states the underlying tort of

the HUFTA violation, and also alleges that Milgroom and Martl engaged in a

scheme of transferring Milgroom's assets to Martl with intent to defraud Plaintiffs.

FAC ¶ 72.  Further, the circumstances of Milgroom's relationship with Martl and

transfers of almost all his assets suggest a joint agreement to defraud Milgroom's

creditors.  *See* Pls.' Exs. K, N, O, S.  Milgroom liquidated his net worth of $10

23

million and systematically transferred it to Martl so that she could place it in offshore accounts.  Martl and Milgroom used some of these funds to purchase the Hawaii Property as tenants by the entirety and then transferred Milgroom's interest to Martl.  By the time they divorced, Milgroom had no colorable assets of his own and declared bankruptcy while at the same time living in the Hawaii Property and being provided funds from Martl.  These circumstances clearly raise the inference that Milgroom and Martl acted in concert to prevent Milgroom's creditors from satisfying Milgroom's debts.  The court therefore concludes that the merits of this claim and the sufficiency of the FAC weigh in favor of entry of default judgment on this claim.

> b.   *The possibility of prejudice to Plaintiffs*

Plaintiffs will suffer substantial prejudice if this action proceeds because it appears that Martl has abandoned this action and has no intention of participating in it.

Martl has not participated in this action for over 18 months and it remains unclear whether she is even aware of its current status.  After default was entered against Martl in December 2007, Martl's counsel sought to have it set aside and explained that he had not been in contact with Martl for some time and therefore could not timely file a response to the FAC.  Doc. No. 236, at 5.

24

Magistrate Judge Chang denied this request because (1) Martl had failed to

participate in this litigation, (2) Martl had failed to provide any address (whether to

Plaintiffs, the court, or even her own counsel); and (3) setting aside the default

would open the door to likely collusion between Defendants because Milgroom

and Maertl had both submitted documents on her behalf yet never verified her

address.

Since the February 7 Order denying Martl's Motion to Set Aside

Default and this court's February 28 Order affirming that decision, Martl has not

attempted to cure any of these problems -- the court *still* does not know her

whereabouts and Milgroom and Maertl have continued to file documents allegedly

on her behalf while at the same time refusing to provide her current address.

Martl's current Declaration, which the court struck above, provides an apt

example.  While the Declaration bears her signature, the arguments in the

Declaration mimic those of Milgroom, her address listed on the Declaration is the

same as Milgroom and Maertl's, and neither Martl, Milgroom, nor Maertl has

provided her current address.  Given that Gierlach has not heard from Martl for the

last 18 months, *see* Gierlach Decl. ¶¶ 4-5, the court has no assurance that Martl is

indeed the individual who submitted this Declaration.  To allow this action to go

forward while Martl continues to ignore her responsibility to participate

25

meaningfully in this action -- *i.e.*, by providing her current address and communicating through her counsel -- would severely prejudice Plaintiffs.  This factor therefore weighs heavily in favor of default judgment.

> c.      *The sum of money at stake in the action*

A default judgment generally is disfavored if there is a large sum of money involved.  *See Eitel*, 782 F.2d at 1472 (denying motion for default in part due to amount sought, which totaled almost $3 million in damages).

In addition to equitable and/or provisional remedies, Plaintiffs seek judgment against Martl in the amount of either the lesser of the value of the Hawaii Property or the Massachusetts Judgment.  Given that the Massachusetts Judgment as of October 2, 2007 was $3,881,612.14, and the Hawaii Property was purchased for $5.2 million, the amount at stake is substantial.  This factor weighs against entry of default judgment.

> d.      *The possibility of a dispute concerning material facts*

Based on the evidence and arguments currently before the court, there is little dispute as to the material facts.  Martl has never presented any evidence to rebut Plaintiffs' allegations and substantial evidence that: (1) Plaintiffs' claims arose prior to the transfer of the Hawaii Property; (2) Milgroom transferred almost all of his net worth to Martl, who placed the funds in a German bank account;

(3) the Hawaii Property was paid with funds that originated with Milgroom;

(4) Milgroom transferred his interest in the Hawaii Property to Martl for no

consideration; and (5) Milgroom became insolvent as a result of the transfer of the

Hawaii Property to Martl.  Rather, in the face of these allegations and evidence,

Martl has again argued that these transfers could not be fraudulent because at the

time of these transfers, the Special Master's Report in the Massachusetts Action

was in effect, which found that Plaintiffs owed Milgroom $150,000.  The Martl

Declaration further argues that the Special Master's Report ended the

Massachusetts Action because the parties had agreed that the Special Master would

"make findings of fact and conclusions of law [that] shall be final and binding on

the parties."  *See* Martl Decl. Ex. A.  While the court has struck Martl's

Declaration, the court nonetheless once again explains why this argument is

meritless.

         In December 1991 in the Massachusetts Action, the parties agreed to

refer their dispute to a special master, whose "findings of fact and conclusion of

law shall be final and binding on the parties."  *See* Martl Decl. Ex. A.  In 1994, the

"Special Master's Report" was issued.  *See* Doc. No. 74, Martl Ex. B-1 (attaching

portions of Special Master's Report).  Under "Ultimate Primary Findings," the

Special Master found that Plaintiffs owed Milgroom $150,000.  *Id.*  While the

27

Valvanis Family objected to the Special Master's Report in 1995, *see* Doc. No. 624, Pls.' Ex. 11 (docket entry 99a), those objections were not timely heard by the court and the Special Master's Report was still in effect at the time Milgroom transferred his assets and the Hawaii Property to Martl.

The Special Master's Report does not impact Milgroom's "creditor" status under HUFTA at the time -- that is, it does not prevent a finding that Milgroom fraudulently transferred his assets to Martl because it was not a final and binding decision on the parties and did not end the Massachusetts Action. In other words, Plaintiffs retained their claim (a disputed right to payment) against Milgroom at the time the Special Master's Report issued. *See* HRS § 651C-1.

The Special Master's Report was not a final findings of fact and conclusion of law, but rather only *primary* findings. Further, Massachusetts Rule of Civil Procedure 53, pursuant to which the Special Master was appointed, does not treat Special Master's Reports as final and instead allows for objections and requires the court to take action on them, either by "strik[ing] the report in whole or in part, modify[ing] it, recommit[ting] it to the master with instructions or tak[ing] any other action that justice requires." Mass. R. Civ. P. 53(h)(2) & (4) (1994); *see also* Mass. R. Civ. P. 53(h)(1) (1994). In the Massachusetts Action, Plaintiffs objected to the Special Master's Report and the Special Master's Report

did not become final.  *See* Doc. No. 624, Pls.' Ex. 11 (docket entry 99a).  Finally,

none of the parties treated the Special Master's Report as a final decision ending

the litigation -- both Milgroom and Plaintiffs filed motions for extensions to file

objections to the Special Master's Report in January and March 1995, and

Milgroom appeared pro se after his attorney withdrew in 1995 and 1998.  *Id.*

(docket entries 94, 95); *id.* at Pls.' Ex. 15 ¶¶ 12, 18.  The Special Master's Report

was therefore not a final decision and neither took away Plaintiffs' creditor status

nor precluded Milgroom's intent to defraud his creditors.

        In sum, Martl has presented no possibility of a dispute concerning the

material facts establishing Plaintiffs' claims against her.[12]  This factor weighs in

favor of entering default judgment.

            e.      *Whether the default was due to excusable neglect*

        Martl's own culpable conduct, not excusable neglect, led to the entry

of default and the subsequent orders refusing to set default aside.  She has refused

to communicate with her counsel of choice for the last 18 months.  Further,

Magistrate Judge Chang gave Martl multiple opportunities to participate in this

action pro se by verifying her address, but she never provided this information.

---

[12]  The Martl Declaration also argues that the court should not enter default judgment at this time because the judgment in the Massachusetts Action is on appeal such that this action against her is premature.  *See* Martl Decl. ¶ 28.  This action is not premature -- Plaintiffs became creditors of Milgroom when they filed the Massachusetts Action.

29

While Martl has purportedly filed documents herself, the court does not know if Martl is truly preparing and filing these documents given that she has not verified her address, she is represented by counsel, and these documents mirror the content of Milgroom's various motions.  Martl's failure to provide her address and verify that she is informed and interested in this action is therefore the result of her own culpable conduct.[13]  In sum, Martl's inaction led to default being entered against her, and her continued inaction makes this factor weigh strongly in favor of entry of default judgment.

f.      *The strong policy favoring decisions on the merits*

While the court recognizes the strong policy favoring resolution of cases on their merits, Martl's refusal to provide her address to her counsel, Plaintiffs, and the court makes proceeding in the instant litigation against Martl futile and would serve only to frustrate the court's ability to manage its docket. Nonetheless, this factor weighs against entry of default judgment.

---

[13]  The Martl Declaration argues that Martl is a victim in an intricate scheme by her previous attorney and Plaintiffs to steal the Hawaii Property from her.  *See, e.g.*, Martl Decl. ¶¶ 6-16.  The court rejects this argument as wholly unfounded and in any event, it does not explain Martl's absence from this action.

g.    *Weighing the* Eitel *factors*

Of the factors discussed above, only the amount at stake in the action and the policy favoring decisions on the merits weigh against entry of default judgment. The other factors, however, all weigh strongly in favor of entry of default judgment. Plaintiffs pled their claims against Martl with particularity and presented significant evidence showing Milgroom's very questionable transfers of almost all of his net worth to Martl. In response to Plaintiffs' allegations and the evidence, Martl has not come forward to participate in any meaningful way in this action. Martl's own culpable conduct caused entry of default, and further supports that default judgment should be entered against her. The court therefore finds that based on all the relevant factors, default judgment against Martl is warranted.

**2.    *Damages*[14]**

HUFTA lists a wide range of remedies available to creditors such as Plaintiffs. HRS § 651C-7 provides:

> (a) In any action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations provided in section 651C-8, may obtain:
>    (1) Avoidance of the transfer or obligation to the extent

---

[14] In addition to damages, Plaintiffs request costs, but also recognize that they must file a proper motion. Accordingly, to the extent Plaintiffs' Second Motion for Entry of Default Judgment Against Martl can be construed as requesting costs, the court DENIES such request without prejudice as premature. Plaintiffs also do not seek damages on the conspiracy claim, so the court limits the damages analysis to the HUFTA claim.

necessary to satisfy the creditor's claim;

(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 651;

(3) Subject to applicable principles of equity and in accordance with applicable civil rules of procedure:

(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) Any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor may, if the court so orders, levy execution on the asset transferred or its proceeds.

Regarding a monetary judgment, HRS §§ 651C-8 (b) and (c) provide:

(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under section 651C-7(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less.  The judgment may be entered against:

(1) The first transferee of the asset or the person for whose benefit the transfer was made; or

(2) Any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee.

(c) If the judgment under subsection (b) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

In light of the court's determination that default judgment should be entered against Martl on Plaintiffs' HUFTA claim, Plaintiffs are plainly entitled to relief and Martl failed to address damages in her Declaration. Plaintiffs request that judgment be entered against Martl in either the amount of the Hawaii Property or the Massachusetts judgment, whichever is less, and also seek a number of equitable remedies to ensure that Plaintiffs can satisfy the judgment from the Hawaii Property. The court addresses these requests.

First, Plaintiffs are entitled to a monetary judgment against Martl because, as required by HRS § 651C-8(b), (1) the transfers to Martl are voidable, and (2) Martl is the first transferee.[15] Regarding the voidability of the transfers, Milgroom purchased the Hawaii Property with his funds for it to be held by Milgroom and Martl as tenants by the entirety, and Milgroom subsequently transferred his interest in the Hawaii Property to Martl. As the court has previously explained, under Hawaii law, "[i]n a tenancy by the entirety, 'neither husband nor wife has a separate divisible interest in the property held by the entirety that can be conveyed or reached by execution.'" *Valvanis*, 529 F. Supp. 2d at 1200-01 (quoting *Sawada v. Endo*, 57 Haw. 608, 614, 561 P.2d 1291, 1295

---

[15]   HRS § 651C-8 outlines several exceptions to the voidability of a transfer, none of which are applicable here because Martl is not a bona fide purchaser and gave no value for the Hawaii Property, and the transactions, causing Milgroom to become insolvent, were not in the ordinary court of business of Defendants. *See* HRS § 651C-8(a), (d), (f)(2).

(1977)).  Nevertheless, "'the creation of the tenancy by the entirety may not be used as a device to defraud existing creditors.'"  *Id.* (quoting *Sawada*, 57 Haw. at 616, 561 P.2d at 1297).  Because the FAC alleges, *see* FAC ¶ 69, and the facts strongly support an inference that Milgroom transferred the Hawaii Property with intent to defraud Plaintiffs, *see* supra §IV(B)(1)(a)(ii), the tenancy by the entirety between Milgroom and Martl was not valid and Milgroom's transfers to Martl are "voidable" as required by HRS § 651-8(b).  *See also Dowling v. Davis*, 295 Fed. Appx. 322 (11th Cir. 2008) ("As the district court explained in this case, the transfer of funds into the tenancy by the entirety was voidable as a fraudulent transfer"); *Alonso v. Comm'r of Internal Revenue*, 78 T.C. 577, 581 (1982) ("[W]e hold that if there is proof that the creation of a tenancy by the entirety between Alonso and petitioner on April 3, 1973, rendered Alonso insolvent, thus constituting fraud on his creditors and, therefore, void under North Carolina law, petitioner may be held liable as transferee in the amount of the full fair market value of the property transferred less the value of payment by petitioner in consideration for such transfer.").

          Regarding the amount of judgment, Plaintiffs are entitled to the lesser of their claim against Milgroom, *i.e.*, the value of the Massachusetts judgment, or the value of the Hawaii Property at the time of the transfer.  At the time of the

initial transfer of the Hawaii Property (*i.e.*, when Milgroom used his monies through Martl to purchase the Hawaii Property), the Hawaii Property was worth $5.2 million, the amount Defendants paid for it. *See* Pls.' Ex. P. In comparison, the amount of the Massachusetts judgment as of today is $4,523,940.29. The court calculates amount of the Massachusetts judgment as follows:

| | |
|---|---|
| Principal Amount as of October 5, 2007:[16] | $3,881,612.14 |
| Accrued Interest (October 6, 2007-June 1, 2009):[17] | $ 642,328.15 |
| Total: | $4,523,940.29 |

Because the total of the Massachusetts judgment as of today is less than the value of the Hawaii Property at the time of the transfer, the court will enter judgment against Martl for $4,523,940.29.[18] To prevent the possibility of duplicative

---

[16] When Plaintiffs entered the Massachusetts judgment as an exemplified foreign judgment in the Circuit Court of the First Circuit, State of Hawaii on October 5, 2007, Plaintiffs calculated its value as of that day as $3,881,612.14. *See* Pls.' Ex. G. Neither Defendant has objected to this calculation.

[17] The court applies a 10% annual interest rate pursuant to HRS § 478-3, resulting in $388,161.21 accruing for the period from October 6, 2007 through October 5, 2008 (10% of $3,881,612.14), and an additional $254,166.94 for the period from October 6, 2008 through June 1, 2009 (per diem interest equals $1,063.46 (($3,881,612.14 x .1) / 365), times a total of 239 days).

[18] Plaintiffs suggest that the court not enter an exact monetary judgment at this time and instead enter judgment against Martl "for the lesser of either (a) Plaintiff's Claim or (b) the Hawaii Property Value." *See* Doc. No. 657. To the extent Plaintiffs suggest that the court must compare these two values at a later date, the court disagrees. Plaintiffs' claim is substantially less than the value of the Hawaii Property at the time of the transfer and even though the claim is accruing interest, it would take years before their claim is more than the value of the Hawaii

(continued...)

recovery by Plaintiffs on their claim against Milgroom, any recovery by Plaintiffs

from Milgroom in the Massachusetts Action should be credited against this

monetary judgment entered against Martl in this action, and any recovery by

Plaintiffs in this action from Martl should be credited against the monetary

judgment entered against Milgroom in the Massachusetts Action.  *See Dowling v.*

*Davis*, 295 Fed. Appx. 322 (11th Cir. 2008).

        Plaintiffs are also entitled to an assortment of equitable remedies to

ensure that they will be able to collect this judgment from the Hawaii Property.

First, the monetary judgment entered against Martl in this action shall be a

monetary lien and equitable lien upon the Hawaii Property as of the date of

Plaintiffs' Notice of Adverse Claim recorded in the Office of the Assistance

Registrar of the Land Court, State of Hawaii as Document No. 339275 on March 3,

2006.  Second, the court imposes a constructive trust and/or resulting trust over all

assets in the Hawaii Property assigned, transferred, or conveyed by Milgroom to

---

[18](...continued)
Property transfer.  Further, whatever monetary judgment the court enters, post-judgment interest
will accrue, preventing their claim from ever being worth more than a judgment based on the
Hawaii Property transfer.
        In addition, the court recognizes that the Hawaii Property might not be able to be sold for
$5.2 million given the current housing market, but the court also recognizes that Martl
contributed to any depreciation in the Hawaii Property when she abandoned it three years ago.
Over this time, the Hawaii Property has fallen into disrepair and has been heavily vandalized.
*See* Doc. Nos. 442, 535.  Accordingly, the equities weigh in favor of a monetary judgment
against Martl for the lesser of Plaintiff's claim and the Hawaii Property, even if Plaintiffs cannot
recover the entire judgment from the Hawaii Property.

Martl, including the Hawaii Property, whereby Martl is the constructive and/or

resulting trustee of these assets for the benefit of Plaintiffs.  Third, the court

permanently restrains and enjoins Martl or anyone acting by, through, or on her

behalf from attempting to sell or transfer any interest in or encumber the Hawaii

Property, or interfere in any way with the sale of the Hawaii Property or liquidation

of the court's judgment entered against her.  Finally, the court expands the duties

and responsibilities of the court-appointed Receiver, Michael D. Hong or his

successor, such that he may undertake appropriate actions consistent with

judgment in this action.[19]

## V.  **CONCLUSION**

Based on the above, the court ENTERS DEFAULT JUDGMENT

against Martl on Plaintiffs' HUFTA and conspiracy claims.  On Plaintiffs' HUFTA

claim, the court finds that Plaintiffs are entitled to a monetary judgment in the

amount of $4,523,940.29.  To prevent the possibility of duplicative recovery by

Plaintiffs on their claim against Milgroom, any recovery by Plaintiffs from

Milgroom in the Massachusetts Action should be credited against this monetary

---

[19] Plaintiffs also ask that the court retain jurisdiction over this action such that Plaintiffs may seek leave of the court to amend or modify the judgments entered in this action in the event that assets other than the Hawaii Property are located within the jurisdiction of this court. Plaintiffs' HUFTA claim, however, was limited to the Hawaii Property.  Accordingly, Plaintiffs are not entitled to this relief.

judgment entered against Martl in this action, and any recovery by Plaintiffs in this action from Martl should be credited against the monetary judgment entered against Milgroom in the Massachusetts Action.

The court further ORDERS that:

1.    the judgment in this action shall be a monetary lien and equitable lien upon the Hawaii Property as of the date of Plaintiffs' Notice of Adverse Claim recorded in the Office of the Assistance Registrar of the Land Court, State of Hawaii as Document No. 339275 on March 3, 2006;

2.    a constructive trust and/or resulting trust shall be imposed over all assets in the Hawaii Property assigned, transferred, or conveyed by Milgroom to Martl, including the Hawaii Property, whereby Martl is deemed the constructive and/or resulting trustee of these assets for the benefit of Plaintiffs;

3.    Martl or anyone acting by, through, or on her behalf is permanently restrained and enjoined from attempting to sell or transfer any interest in the Hawaii Property, or interfering in any way with the sale of the Hawaii Property or liquidation of the court's judgment entered against Martl; and

4.     the duties and responsibilities of the court-appointed Receiver,

Michael D. Hong or his successor, are expanded consistent with

default judgment being entered against Defendants, without further

order of the court.  Such duties and responsibilities shall include, but

are not limited to, assisting Plaintiffs with (a) inspection of the Hawaii

Property, (b) liquidating the Judgment entered against Martl, and (c)

execution against the Hawaii Property pursuant to HRS § 651 or other

applicable law.  Among such other things, the Receiver is authorized

and directed to repair and restore the Hawaii Property to the extent

necessary to adequately show and hold open houses of the Hawaii

Property for prospective purchasers and interested parties, and allow

the Receiver to advertise and otherwise market the Hawaii Property

for sale, and accept offers for purchase of the Hawaii Property, subject

to court approval.

Because no claims remain against Milgroom or Martl, the court orders the Clerk of Court to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 1, 2009.



      /s/ J. Michael Seabright
      J. Michael Seabright
      United States District Judge

*Valvanis et al. v. Milgroom et al.*, Civ. No. 06-00144 JMS/KSC, Order Granting Plaintiffs' Second Motion for Entry of Default Judgment Against Defendant Nada R. Martl as to the First Amended Complaint